## WEST v. DETROIT UNITED RAILWAY.

1. NEGLIGENCE—FORM OF ACTION — SURVIVAL ACT — WRONGFUL DEATH.

   A continuing injury, resulting in death within a few moments, is instantaneous within the meaning of the death act; 3 Comp. Laws, § 10427, and where an injured person continued to live for fifteen minutes after he was struck by a street car, being dead when removed from beneath it, the action should be brought under the death act and not the survival act.

2. SAME—CONTRIBUTORY NEGLIGENCE — STREET RAILWAYS—CUSTOMS IN OPERATION—REGULATIONS.

   While a pedestrian may rely, in crossing a street car track near its intersection with another track, on a custom or regulation to stop cars at a given place, the rule is not applicable to a decedent who, while engaged in conversation, attempted to cross in front of a car in plain view running at full speed, when a glance at it must have advised the deceased that it was not intended to observe the custom.

Error to Wayne; Lockwood, J., presiding. Submitted October 14, 1909. (Docket No. 86.) Decided December 30, 1909.

Case by Mary F. West, administratrix of the estate of Charles L. West, deceased, against the Detroit United Railway for the negligent killing of plaintiff's intestate. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*Brennan, Donnelly & Van De Mark*, for appellant.

*Trevor & Bumps*, for appellee.

On August 16, 1907, the day on which plaintiff's decedent lost his life, defendant company operated a double-track street railway on Gratiot avenue, Detroit. On and prior to that date Gratiot avenue was torn up for the purpose of repaving, and a temporary track was laid, south of the regular tracks, and within about four feet of the south curb, for the accommodation of east-bound cars. At the time of the accident, there were three tracks on Gratiot avenue where it intersects the East Grand boulevard. There were two temporary cross-overs, built across the tracks at this point, to accommodate traffic going north and south upon the boulevard. Decedent, in company with Philip West, his son, and Emil O. Basey, his son-in-law, was walking east on the south side of Gratiot. When they reached the boulevard, they desired to cross Gratiot, and attempted to do so, about 15 or 20 feet east of the west curb of the boulevard, south of Gratiot. Philip West and Basey were slightly in advance of decedent, and crossed in safety; but decedent was struck by an east-bound car. He was carried under the car and crushed, so that when taken out life was extinct. He was heard to groan for about 15 minutes after the accident. Decedent had resided in Detroit about two weeks.

BROOKE, J. (*after stating the facts*). Plaintiff's principal allegation of negligence is based upon the fact that the car which struck plaintiff's decedent did not stop at the westerly side of the boulevard, in violation of its duty so to do. It was the claim of plaintiff that decedent

in crossing the track relied upon the custom of the eastbound cars to stop at the westerly side of the boulevard. Exhibits were introduced by defendant, at plaintiff's request, showing that on July 16 and 29, 1907, bulletins were issued by defendant. requiring all cars to stop before crossing the boulevard. Testimony was introduced on the part of the plaintiff tending to show that plaintiff's deceased knew of the custom, having observed and remarked upon it a short time previously. On behalf of the defendant, it was shown that motormen were instructed by the division superintendent to disregard this order during the period of reconstruction, and stop at the point in the boulevard where the temporary crossings had been built. This, for the reason that passengers could neither conveniently board nor alight from the cars, except at said crossings, on account of the height of the step from the ground.

Three grounds for reversal are urged by defendant:

*First*. That the plaintiff has selected the wrong remedy. The action is planted upon the so-called "death act" (3 Comp. Laws, § 10427), and defendant contends that as, under the undisputed testimony, plaintiff's deceased continued to live for some 15 minutes after he was struck, though he was dead when taken from beneath the car, the appropriate remedy is under the survival act (3 Comp. Laws, § 10117), citing the case of *Olivier* v. *Street Railway Co.*, 134 Mich. 367 (96 N. W. 434, 104 Am. St. Rep. 607). We are of opinion that this case is distinct authority for the opposite view. Where there is a continuing injury, resulting in death within a few moments, it is "instantaneous" within the meaning of the statute.

It is next urged that no negligence was shown on the part of the defendant, and that plaintiff's decedent was guilty of contributory negligence, as a matter of law. We will discuss the latter question first. Emil O. Basey, the son-in-law, on cross-examination, testified as follows:

"When I crossed the track, I was about 15 or 20 feet east of the west curb of the south boulevard. The tem-

porary track was about 3½ or 4½ feet from the south curb.

"*Q.* Just before you got to the track, if you and Mr. West had stopped, that car would have gone by, if you had stopped before stepping on the track?

"*A.* Yes.

"*Q.* As a matter of fact, it would, wouldn't it?

"*A.* Yes, sir.

"*Q.* The car was right there?

"*A.* Yes.

"*Q.* You stepped on the track, and the car hit Mr. West?

"*A.* Yes.

"*Q.* So probably the car was a very short distance from Mr. West when he stepped on the track?

"*A.* It was about, I should say about, 30 feet.

"*Q.* Coming at full speed!

"*A.* Coming at fair speed—regular speed. It was the speed as they generally run on Gratiot avenue there. I could not just exactly say what speed. I was ahead of the deceased, and Philip West was ahead of him. Philip West stepped upon the track first. He crossed it. I stepped on the track and just about got off by the time that the car struck Mr. West. The motorman did not stop at the boulevard. When the deceased was struck, I was up to the next track, about as far as the next track, about 4 feet. Mr. West was a little in back of me, about a step behind, so that just as Mr. West was stepping through the track the car hit him."

Philip G. West, the son, on direct examination, testified:

"We started catering across Gratiot avenue. We struck the temporary track about 15 or 20 feet east of the west curb of the boulevard south on Gratiot. Mr. Basey was between myself and father. I had not noticed a car coming until I was in between the rails of the temporary track. The car at that time was part way between the boulevard and Helen. It was nearer the boulevard than Helen, I could not say exactly how many feet.

"*Q.* Could you give us an estimate?

"*A.* Well, it might have been halfway between the boulevard and Helen.

"*Q.* You were on the temporary track at that time?

"*A.* Yes, sir.

"*Q.* Where was your father?

"*A.* Why he was about getting onto the temporary track when I was in the middle of the track. We were about 15 feet east of the west curb of the boulevard. When my father was struck, I was just stepping onto the main track; that is, the permanent track.

"*Q.* About where was your father when he was struck?

"*A.* He was either stepping on, or had his foot on, the track. I could not say which. He was just stepping on the second rail when the fender of the car struck him. He fell backwards. The car ran between 75 and 125 feet after it struck him."

It is apparent from this testimony that the three men, engaged in conversation, attempted to cross in front of a car moving at full speed, in broad daylight, when it was in such close proximity that the most casual observation should have warned them of the danger. If, as testified to by Basey, the car was but 30 feet away, and running at full speed, when plaintiff's decedent stepped upon the track, it was then but 10 or 15 feet west of the westerly line of the boulevard, the point at which, according to plaintiff's contention, it should have stopped, in compliance with the rule. A car running at full speed cannot be stopped in such a short distance, and a glance must have advised plaintiff's decedent that no stop was intended by the motorman. He could not rely upon compliance with a rule or custom, of the instant breach of which he had actual notice. Evidence of a regulation or custom is admissible as bearing upon decedent's negligence. *McKernan* v. *Street Railway,* 138 Mich. 519 ( 101 N. W. 812, 68 L. R. A. 347), and cases cited. But there is no room for the application of testimony of this character where, as in the case at bar, the physical facts are such as to show beyond peradventure that plaintiff's decedent, in the exercise of the most ordinary prudence, could not have relied upon such custom or regulation.

Judgment reversed, and a new trial ordered.

Blair, C. J., and Grant, Moore, and McAlvay, JJ., concurred.