## WOOD v. STANDARD DRUG CO.

1. DEATH—NEGLIGENCE—ESTATES OF DECEDENTS.

    If death is not instantaneous, the representative of the decedent's estate may recover under the survival act (3 Comp. Laws 1915, § 12383) the full measure of damages for the benefit of the next of kin: if instantaneous, he may recover under the death act (3 Comp. Laws 1915, § 14577) a limited amount of damages for such pecuniary injury only as they can show has been sustained. *Dolson* v. *Railway Co.*, 128 Mich. 444 (87 N. W. 632).

2. SAME—DRUGS—DEATH—ACTIONS.

    Accordingly, where defendant furnished a drug to be administered by the decedent's parent, purporting to be mercurius viv, but which produced death in about 12 hours, the death could not be said to have taken place instantaneously, and suit was brought correctly under the survival act. 3 Comp. Laws 1915, § 12383.

3. SAME—QUESTION OF FACT—PROXIMATE CAUSE.

    Where the court submitted to the jury the questions whether or not the administration of the drug was the proximate cause of the infant's decease and whether or not there was negligence on the part of the mother contributing to the death, the defendant had no ground to complain, as the first was clearly an issue of fact, and the latter question was determined favorably to defendant by submitting the issue to the jury.

4. SAME—APPEAL AND ERROR—RECORD.

    *Held*, also, that the alleged failure of the parent of the decedent to follow directions given in the book from which she took the prescription would not be a sufficient ground for reversal, unless appellant made it appear of record that the drug should have been treated as claimed.

5. SAME—TRIAL—REQUESTS.

    A request to charge the jury that it was not necessary to conclude from the evidence that deceased died as a result of taking corrosive sublimate, and that the symptoms were not necessarily those of poisoning by that drug, and were not even characteristic, that it would at least be expected

that the history of a case of poisoning by that means would be different and resembled more nearly symptoms of an overdose of calomel or santonine, and that there was evidence that acute indigestion might have been caused by any drug, etc., was of an argumentative nature and was correctly refused. It was further objectionable because it instructed the jury what inferences of fact they were to draw from the evidence. Counsel should have stated his several theories and asked that the jury be instructed in relation thereto: requests to have certain bits of evidence favorable to his claims emphasized were improper. If the court failed to cover any of his contentions in its instructions, counsel should have challenged attention to the fact at the time.

Error to Wayne; Mandell, J. Submitted June 15, 1915. (Docket No. 42.) Decided March 31, 1916.

Case by Thomas A. Wood, administrator of the estate of Jack Beverly Wood, deceased, against the Standard Drug Store, a corporation, brought under the survival act, for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*A. G. Pitts,* for appellant.

*Chawke & Sloan,* for appellee.

BIRD, J. Mrs. Virginia Wood's boy Jack, two and one-half years of age, was suffering with pinworms. Mrs. Wood consulted a medical work entitled "The 20th Century Book for Every Woman," and found the following treatment for pinworms:

"Treatment: Prepare a small quantity of starch, as it is generally used in starching clothes, only a trifle thinner. To 4 tablespoonfuls of this add 2 drops of spirits of turpentine, mix it thoroughly, and inject into the rectum. A second application would not be required if the eggs could be killed by such treatment. * * * At least once a day the rectum should be well greased with lard, etc. This will prevent the

propagation of the worms. The size of a pea of santonine in powder form or two tablets mashed into powder mixed with the lard would increase its efficacy. A dose of mercurius viv should be given in the morning, and one of silica at night for one month to remove the predisposition to worms."

Mrs. Wood concluded to try the treatment, and accordingly handed her husband a paper upon which was written the following, with the request that he purchase them:

```
Spirits of Turpentine...............................10c
Santonine .........................................10c
Mercurius viv .....................................10c
Silica ............................................10c
```

Mr. Wood presented the paper to the prescription clerk at defendant's store in the city of Detroit, and he read it over and inquired what "mercurius viv" was, and what it was to be used for, and Mr. Wood replied: "My little boy has pinworms." Soon thereafter the clerk delivered to him two bottles, one of turpentine, the other of silicate of soda, and two small envelopes each containing a powder, one being marked santonine, and the other calomel. Under the word "calomel" was written in parentheses "mercurius viv," and under that the words "mild form." Mr. Wood delivered the medicine to his wife, and at 4 o'clock in the afternoon of that day she administered to Jack from the powder marked calomel about as much as could be held on the tip of a teaspoon. Jack immediately grabbed his throat and began to scream and choke, and said: "Oh, mother, it burns! it burns!" soon thereafter he began to vomit and purge. Medical help was summoned and treatment administered, but the burning sensation was not relieved. At about 4 o'clock the next morning he died. The post mortem disclosed no poison, and the official cause of death was given as acute gastritis. An examination of the stomach,

liver, and kidneys by Dr. Clark, the county physician, found them inflamed and congested.

The theory upon which the plaintiff recovered was that among other drugs called for at defendant's store was mercurius viv; that mercurius viv was not furnished, but that some irritating poison was substituted therefor which caused the death of the boy. In support of this theory it was shown that a dose the size of that given to the boy either of calomel or mercurius viv would not produce death; neither would it produce the inflammation found in the stomach, liver, and kidneys. Some of the medical experts said mercurius viv was quicksilver. Others said it was quicksilver "rubbed up" with sugar. It could not be definitely determined what the powder was which was administered, because after seeing the effect of it upon the boy the mother threw it into the fire, fearing lest a younger child might get it. The opinion of the attending physician was that the symptoms indicated an irritating poison not unlike that of corrosive sublimate, and that the failure to discover it at the post mortem may have been due to the excessive vomiting. Plaintiff's testimony tended to support his theory of the case.

Defendant admits that it substituted calomel for mercurius viv, but it insists that in so doing it substituted a less poisonous and less dangerous drug than the one called for; that the boy did not die as a result of the substitution, but from a failure of the mother to properly administer the drugs, and, further, that the boy's death was not caused by any of the drugs furnished. The trial resulted in a verdict for plaintiff, and the defendant assigns error.

1. That this action should have been based on the death act instead of the survival act is one of defendant's contentions. After much consideration of these

190 Mich.—42.

two statutes (sections 10117 and 10427, 3 Comp. Laws; 3 Comp. Laws 1915, §§ 12383, note, and 14577) by this court, it promulgated a rule for the benefit of courts and litigants by which it could be determined with reasonable certainty under which statute to proceed. It is that:

"If the death be not instantaneous, the administrator recovers under the survival act the full measure of damages for the benefit of the next of kin. If it be instantaneous, he recovers under the death act, for the same persons, a limited amount of damages, viz., for such pecuniary injury only as they can be shown to have suffered." *Dolson* v. *Railway Co.*, 128 Mich. 444, 454 (87 N. W. 632).

The testimony in this case shows that the boy survived nearly 12 hours. Under no reasonable construction could it be said that his death was instantaneous. If it were not, it was properly brought under the survival act. Counsel bases his contention upon the case of *West* v. *Railway*, 159 Mich. 269 (123 N. W. 1101), where it was held that:

"Where there is a continuing injury, resulting in death within a few moments, it is 'instantaneous' within the meaning of the statute."

Counsel argues that this was a continuing injury, resulting in death, but gives no heed to the limitation of a few moments placed upon it. There is no room under the testimony in this case to claim that the action should have been brought under the death act.

2. Counsel in his brief, under the heading, "Negligence and Contributory Negligence," complains because the court failed to give his requests thereon. In defendant's requests Nos. I and II the court was, in effect, asked to direct a verdict for defendant, on the ground that the substitution of the drug was not the proximate cause of the death of the boy, and on the ground that the mother was guilty of contributory negligence in administering the drug. Both of these

questions were submitted to the jury. The question of proximate cause was clearly one for their consideration. The case of *Love* v. *Railroad Co.*, 170 Mich. 1 (135 N. W. 963), indicates that the question of the contributory negligence of the mother was not one for the jury. But whether it was or not is now of no importance, as its submission worked no injury to the defendant. Counsel in this connection offered certain alternative requests, numbered I to XV and from XVII to XXIX. We shall consider only those which have been considered by counsel in his brief.

3. Request No. VII asked the court to instruct the jury that the book from which Mrs. Wood copied the "treatment" prescribed a sixth attenuation of metallic drugs and a third attenuation of vegetable drugs. This request included a formula by which the sixth attenuation is reached. The book referred to was at the trial, and appears to have been used by counsel in his cross-examination of Mrs. Wood, and some extracts read therefrom, but we find no basis in the record for such an instruction, and our attention has not been called to any page in the record which would justify it. If the book showed that the drugs purchased by Mrs. Wood were to be attenuated or diluted, as indicated, before using, it was the duty of counsel to make it appear of record in this court.

4. The twenty-fourth request was as follows:

"On the other hand, from the testimony in this case it is not necessary to conclude that the child died as the result of a dose of corrosive sublimate. It is in evidence in this case that the symptoms testified to are not necessarily the symptoms of poisoning by corrosive sublimate; that they are not even characteristic; that it would at least be expected that the history of a case of poisoning by corrosive sublimate would be different from this; that they resemble to a greater extent the symptoms which would result from an overdose of santonine or of calomel. And there is evidence that the acute gastritis or acute indigestion of which

the child died may not have been caused by any drug; also that it might be caused by silicate of soda. There is no direct evidence that the silicate of soda was administered, and it is denied by the mother that it was, but it is admitted that it was bought for that purpose, and you may find from the circumstances of this case that possibly it was administered, and that the mother is mistaken."

This instruction was properly refused. It was objectionable because argumentative. *People* v. *Crawford*, 48 Mich. 498 (12 N. W. 673).

And it was likewise objectionable because it instructed the jury what inferences of fact they were to draw from the evidence. *Richards* v. *Fuller*, 38 Mich. 653.

Counsel observes that the court's refusal to submit this request resulted in his being deprived of having most of his theories stated to the jury. The court undertook to and did state several of them, and, if others were omitted, it was the duty of counsel to call the court's attention to the omission at the time. In this request counsel does not state his several theories and ask that they be given to the jury, but he requests the court to call the attention of the jury to certain bits of evidence which tended to support his several theories, and comment upon them. The court was not in error in refusing to do so. *Beurmann* v. *Van Buren*, 44 Mich. 496 (7 N. W. 67).

5. Complaint is made because request XV was refused.

"The drug clerk would have been justified in filling this order with quicksilver, and asking no questions and making no remarks. It is admitted that he filled it with something else. But that fact does not of itself give the plaintiff any right of action. It must be further established by competent evidence: (1) That he had no right to fill the order with anything else; (2) that his substitution was a negligent one; (3) that it caused the death of the child; (4) that it was the

proximate cause; (5) that there was no negligence on the part of the child's parents which contributed to the injury."

This request was not given in the form suggested, but each one of these items was fully covered by the general charge of the court.

The remaining assignments of error which are noticed in counsel's brief have reference to the admission and rejection of testimony. These will call for no discussion, as we have examined them and find no error which calls for a reversal of the judgment.

The judgment of the trial court is affirmed.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.