OLCHEFSKY v. MERCIER, BRYANT, LARKINS BRICK CO.

1. TRIAL—ON MOTION FOR DIRECTED VERDICT FOR DEFENDANT TESTIMONY CONSIDERED FAVORABLY FOR PLAINTIFF.

   Upon a motion to direct a verdict for defendant, the testimony and its legitimate inferences most favorable to plaintiff must be accepted, although the burden of proof of the issue is on plaintiff.

2. MASTER AND SERVANT—NEGLIGENCE—QUESTION FOR JURY.

   In an action against a brick manufacturing company not under the workmen's compensation act for the death of an employee, alleged to have been caused by inhaling carbon monoxide gas, due to improper construction of defendant's furnace and the use of improper methods in its operation, the question of defendant's negligence, under the evidence, was for the jury.

3. DEATH—SURVIVAL ACT.

   In an action against an employer not under the workmen's compensation act for the negligent death of an

¹Trial, 38 Cyc. p. 1586; ²Master and Servant, 39 C. J. § 1319; ³Death, 17 C. J. § 175; 35 L. R. A. (N. S.) 679.

employee alleged to have been caused by inhaling carbon monoxide gas, testimony that the direct cause of death did not continue to operate directly upon decedent until life was extinct, *held,* to justify recovery under the survival act.

4. APPEAL AND ERROR—WHEN REVERSAL JUSTIFIED BECAUSE VERDICT AGAINST WEIGHT OF EVIDENCE.

The power of the Supreme Court to set aside verdicts and judgments because against the weight of the evidence does not make it original trier of the facts, nor is it sufficient that it would have reached a different result from that reached by the jury, but to warrant reversal the verdict must be against the clear weight of the evidence.

5. SAME—WEIGHT OF EVIDENCE.

Verdict for plaintiff. *held,* not so manifestly against the clear weight of the evidence as to justify reversal.

Error to Wayne; Murphy (Alfred J.), J.     Submitted June 14, 1927.     (Docket No. 72.)     Decided October 3, 1927.

Case by Bernice Olchefsky, administratrix of the estate of Ignatz Olchefsky, deceased, against the Mercier, Bryant, Larkins Brick Company for the negligent killing of plaintiff's decedent.     Judgment for plaintiff.     Defendant brings error.     Affirmed.

*Richard I. Lawson (H. E. Spalding,* of counsel), for appellant.

*Harry J. Lippman (Ernest W. Ver Wiebe,* of counsel), for appellee.

Plaintiff's decedent was in the employ of defendant as a fireman.     Defendant manufactured brick and was not operating under the workmen's compensation act.     While at work in defendant plant, decedent met his death, as claimed by plaintiff, under circumstances rendering defendant liable; as claimed by defendant,

[4]Appeal and Error, 4 C. J. § 2838; [5]Id., 4 C. J. § 2838.

from natural causes.   Defendant operated four boilers, the furnaces underneath them being fed automatically with coal.   The furnaces were not provided with grates and once or twice during the period of work the fire had to be "pulled" from each furnace.   This was done by the fireman with an iron hoe provided by defendant.   The contents of the furnace, consisting of ashes, clinkers, and some burning coal, were pulled out onto the floor in front of the furnace, were wet down, and hauled away in wheelbarrows, some four wheelbarrow loads resulting from each operation. It is plaintiff's theory and claim that decedent met his death by inhaling carbon monoxide, a poisonous gas emanating from the burning coal; that the tool furnished him, an iron hoe, was of such length as to require him to stand practically over the refuse pulled out in completing the job; that the construction of the furnace was faulty in not providing grates through which only ashes and clinkers would fall, which if pulled out would emit no poisonous gas; that the room had no ventilation which would diffuse the gas, and that, therefore, the deceased was required to work in an unsafe place and' was provided with unsafe tools to do the work.   The defendant, on the other hand, insists that its furnaces were properly constructed, according to recognized plans, had been inspected and approved by the proper public official; that its plant was properly ventilated; that the boilers had been operated in the same manner without accident for over six years before this occurrence; that deceased did not meet his death as claimed, but that it resulted from natural causes, the autopsy performed by the coroner of the county, a physician of many years' experience, revealing a serious condition of decedent's heart which defendant claims caused his death.   Further facts disclosed by the testimony and necessary to an understanding of the questions presented will be more fully

stated as we proceed. The trial judge concluded that the case was one for a jury, and a verdict awarding damages under the survival act was rendered. Defendant here submits that:

"The questions for consideration, then, are:
" (1) Was there sufficient evidence for submission to the jury that death resulted from defendant's negligence?
" (2) Whether there was sufficient evidence to warrant a recovery under the survival act?
" (3) Whether the verdict should have been set aside as against the great weight of evidence?"

FELLOWS, J. (*after stating the facts*). 1. Defendant's claim that the boilers and furnaces were installed according to approved methods and operated in accordance with the common practice has support in the testimony of qualified witnesses called by it. But this testimony is not undisputed. Plaintiff's testimony tends to support plaintiff's claim that proper methods were not used in its operation, and that it was not of proper construction. Of course, on this issue the burden was on plaintiff, but upon a motion to direct a verdict for defendant the testimony and its legitimate inferences most favorable to plaintiff must be accepted. A fireman of several years' experience called by plaintiff gave testimony in a somewhat crude way tending to support plaintiff's claim, and a graduate mechanical engineer of 14 years' experience, called as an expert, gave in detail the dangers liable to arise from hauling out live coal producing carbon monoxide instead of using grates, the effect of carbon monoxide, and testified that the operation was not in accordance with common practice and was not entirely safe. We are persuaded that the question of defendant's negligence was for the jury.

2. Decedent worked on the night shift but he worked alone. Plaintiff called one Zimmerman, an employee

of defendant in other work.    He testified, in substance, that a man whom he did not see in the darkness and did not know called out that the fireman was hurt; that he went to the little door of the boiler room, but there was too much gas and he threw open the big door and found deceased lying on a pile of the refuse in front of the furnace, the furnace door open, and the iron hoe by his side; that he was burned; that he pulled him off the pile and found his heart still beating; that he called the foreman, opened up more doors and windows, and about five minutes later "he tried his heart again" and he was dead. There was other testimony tending to show deep burns on the body.    Plaintiff's medical testimony tended to establish that deceased died from paralysis of the respiratory organs caused by inhaling carbon monoxide, a poisonous gas.    It also tended to establish that if the body was in the condition and of the color described by some of the witnesses death was not instantaneous.    How long deceased had lain on the ashes and coals no one knows.    Zimmerman's testimony tended to show that he was alive after he had been removed from the pile, and that the direct cause of the death did not continue to operate directly upon him until life was extinct.    Upon the record as made, we can not say that there was no testimony justifying recovery under the survival act.    For cases dealing with the subject, see *Olivier* v. *Railway Co.,* 134 Mich. 367 (3 Ann. Cas. 53, 104 Am. St. Rep. 607) ; *West* v. *Railway,* 159 Mich. 269; *Beach* v. *City of St. Joseph,* 192 Mich. 296; *Swaczyk* v. *Detroit Edison Co.,* 207 Mich. 494; *Ely* v. *Railway,* 162 Mich. 287; *Nelson* v. *Glover,* 231 Mich. 229; *Paperno* v. *Engineering Co.,* 202 Mich. 257.

3. Defendant vigorously challenges the truthfulness of Zimmerman's testimony.    It is stressed that it is in conflict with that of the chief of police of Springwells,

where the plant was located, and the two witnesses who accompanied him to the scene of the occurrence. But this conflict was on an immaterial point, the hour the accident occurred. The chief testified that he had not seen Zimmerman until he saw him in court. Over five years elapsed from the occurrence to the date of the trial. Some allowances must be made for lapse of memory during that time, and it is not without significance that Zimmerman testified that he called up the foreman of defendant, a man named Hill, and that Hill was not called as a witness to deny this nor was his absence explained. Attention is also challenged to the fact that the autopsy was performed by the coroner, a public official with much experience in performing autopsies, and that the plaintiff's medical testimony was by experts alone. The jury, in answer to a special question, found that the death did not result from natural causes. It is also urged that the testimony offered by defendant on the question of proper installation and operation of the furnaces was of greater probative force than that offered by plaintiff. If we were the triers of the facts we might not find difficulty in agreeing with some or all of defendant's contentions as to what the facts were. But this is not the measure of either our power or our duty. In the recent case of *Lewis* v. *Whitney*, 238 Mich. 74, in considering this question, it was said:

"The power to ultimately set aside verdicts and judgments on this ground has been wisely committed to this court, and when and as the occasion arises must be exercised by us. But this does not make us the original triers of the facts or require us to hear cases on the law side *de novo*. It is not sufficient that we would have reached a different result had we been members of the jury. The verdict must be against the clear weight of the evidence, against the overwhelming weight of the evidence, it is sometimes said; manifestly against the weight of the evidence, it is

also said.    These are the standards set by former decisions of this court too numerous to cite."

We cannot upon this record say that the verdict is so manifestly against the clear weight of the evidence as to justify us in setting it aside.

The judgment must be affirmed.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and MCDONALD, JJ., concurred.