NATIONAL LIBERTY INSURANCE CO. *v.* FOTH.

1. APPEAL AND ERROR—DIRECTED VERDICT.

In reviewing judgment for defendant on directed verdict, the testimony and its legitimate inferences most favorable to plaintiff must be accepted.

2. SAME—INFERENCES FROM TESTIMONY NOT CONSIDERED.

In action for damages resulting from automobile collision, inferences which might be drawn from testimony tending to relieve defendant of negligence and to show that driver of plaintiff's car was negligent may not be considered, on review, in view of fact that verdict for defendant was directed.

3. MOTOR VEHICLES—NEGLIGENCE—PRESUMPTIONS.

Automobile driver approaching intersection on pavement must be assumed to have seen automobile approaching on cross road and about to enter pavement in front of him.

4. SAME—DIRECTED VERDICT.

If automobile approaching pavement on cross road was running at such rate of speed that it indicated driver did not intend to stop, but planned on entering pavement in front of defendant's car, jury might have found that defendant was negligent in failing to reduce his speed at time when application of brakes would not have caused his car to skid in front of plaintiff's car, and therefore directed verdict in favor of defendant was error.

---

Liability for damages for injury caused by skidding motor vehicle, see annotation in 58 A. L. R. 264.

5. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

Where automobile collision was caused by defendant's car skidding in front of plaintiff's car when defendant applied his brakes to avoid hitting car entering pavement from cross road, question of negligence of both plaintiff and defendant, under the circumstances, should have been submitted to jury, and therefore directed verdict in favor of defendant was error.

6. PARTIES—ASSIGNMENTS—REAL PARTY IN INTEREST.

Where insurance company paid owner for damages to his automobile by collision and took assignment of all of owner's claims therefor, insurance company was real party in interest and could maintain suit in its own name.

7. ACTION—ASSIGNMENT OF CLAIM—SPLITTING CAUSE OF ACTION.

Where automobile owner assigned all of its claim for damages by collision to insurance company which paid the loss, and owner makes no claim for damages other than that assigned, there was no splitting of cause of action.

Error to Kent; Perkins (Willis B.), J. Submitted January 20, 1931. (Docket No. 57, Calendar No. 35,015.) Decided April 7, 1931.

Case by National Liberty Insurance Company, assignee, against Charles Foth for damages to an automobile resulting from a collision. Directed verdict and judgment for defendant. Plaintiff brings error. Reversed, and new trial ordered.

*Mason, Alexander & McCaslin,* for plaintiff.

*Dunham, Cholette & Allaben,* for defendant.

SHARPE, J. On March 25, 1929, while George E. Kelley, manager of the wholesale grocery firm of Lee & Cady, a corporation, was driving an automobile, owned by it, north on the paved highway from Lansing towards St. Johns, the car collided with that of the defendant at a point about five miles north of Lansing, and was badly wrecked.

The plaintiff, with which the corporation had its car insured, after investigation, settled for the damage done to it and took from the corporation a "Subrogation Receipt," acknowledging payment of $865 and assigning its right to damages arising out of the collision. This action is brought for the recovery thereof. At the conclusion of plaintiff's proofs, the trial court directed a verdict for the defendant. Plaintiff seeks review of the judgment entered thereon by writ of error.

The verdict having been directed, "the testimony and its legitimate inferences most favorable to plaintiff must be accepted." *Olchefsky* v. *Brick Co.*, 240 Mich. 536, 539.

Earl C. Gignac, who was driving south about 200 feet behind defendant's car, was a witness to the accident. He testified that defendant's car was traveling about 40 miles an hour; that just before the collision a car from the east came on the paved highway at an intersection "directly in front of the man in front of me;" that the pavement was wet; that defendant apparently applied his brakes, and his car veered to the left and turned partly around on the east side of the pavement on which Mr. Kelley was driving, and that Kelley's car crashed into it and forced it off the west side of the traveled portion of the highway. Mr. Kelley testified:

"I was driving in a northerly direction. I saw two or three cars coming towards me, and when I saw those cars coming towards me one of them deviated from its regular course. The cars were all on the right-hand side of the road when I first saw them coming, or on the west side of the road. The second car turned out of its course and went directly east. When this car came over towards the east or on the east side of the road I just threw on my

brakes and shut my eyes. I was less than ten feet from this car when it turned over onto my side of the road. My car is almost a total wreck. Mr. Foth was driving this other car. After the accident I inquired as to whether he or his wife was hurt, and just talked about the accident in regard to I had no chance of missing him, and he agreed. He said something about a car ahead of him started to stop and he threw on his brakes to miss hitting that car and skidded across the road."

Carl J. Weale, the Lansing manager of Lee & Cady, testified that he came to the scene of the accident about an hour after it occurred; that the defendant was still there, and in answer to a question put to him by the witness,

"He said that his car skidded in front of the car going north which was Mr. Kelley's, and that Mr. Kelley had no opportunity to stop."

While it may be said that under the cross-examination of Gignac and Kelley inferences may be drawn which tend to relieve the defendant from the charge of negligence, and to show negligence on the part of Kelley, these may not be considered in view of the fact that a verdict was directed.

It must be assumed that the defendant saw the car on the side road as it approached the intersection. If it was running at a rate of speed and in a way which indicated that the driver did not intend to stop, but planned on entering the paved highway in front of defendant's car, then the jury might have found that the defendant's failure to reduce the speed of his car at a time when the application of the brakes would not have resulted in causing it to skid, as it did, directly in front of that driven by Kelley, was negligence on his part and the proximate cause of the collision. Whether Kelley was

negligent in not sooner checking the speed of the car he was driving, or turning so as to avoid the collision, was doubtless also a question for their consideration. But, on the record now before us, it must be said that there was error in the direction of a verdict for the reason that no negligence on the part of the defendant was established and that Kelley was guilty of contributory negligence.

The trial court was also of the opinion that under the terms of the "subrogation receipt" the entire claim of Lee & Cady was not assigned to plaintiff, and that, as a plaintiff may not split a cause of action, recovery could not be had thereon. This instrument, after reciting the payment of $865, in settlement of all claims and demands for loss and damage to the car insured, stated that Lee & Cady—

"hereby assigns and transfers to the said company each and all claims and demands against any other party, person, persons, property or corporation arising from or connected with such loss and damage (and the said company is hereby subrogated in the place of and to the claims and demands of the undersigned, against said party, person, persons, property or corporation in the premises) to the extent of the amount above named and the said company is hereby authorized and empowered to sue, compromise or settle in their name or otherwise to the extent of the sum of money paid as aforesaid."

While called a "subrogation receipt," this instrument by its terms was an assignment by Lee & Cady to the plaintiff of its claim for the damages sustained by it by the injury to its car to the amount stated. In *Heck* v. *Henne,* 238 Mich. 198, 201, wherein it appeared that a similar assignment had been made, this court said:

"By assignment before suit, the insurance company was the real party in interest seeking recovery for damage to the automobile."

In *McPeake* v. *Railway Co.*, 242 Mich. 676, where both the owner and the insurance company were joined as plaintiffs, it was said (678):

"The assignment to the insurance company stated that it was to the extent of the payment made by the company to McPeake. There was an improper joinder of parties plaintiff. The cause of action could not be split. The suit should have been dismissed as to plaintiff McPeake when it appeared that he had assigned his right of action (*Heck* v. *Henne*, 238 Mich. 198), and, as such fact was stated in the declaration, defendant was entitled to such an order at once, upon request. The request was made early in the trial and denied, and McPeake gave his direct testimony as a plaintiff, but, at the close thereof, he was dropped. His improper joinder was not fatal. 3 Comp. Laws 1915, § 12364 (3 Comp. Laws 1929, § 14021)."

This action was brought in the name of the insurance company under the assignment made to it, and its right to recover is sustained by these decisions. It may, however, be well said that there was no splitting of the cause of action as it conclusively appears from the evidence that Lee & Cady make no claim for any other damage than that assigned to the plaintiff.

Attention may properly be called to Act No. 271, Pub. Acts 1929 (3 Comp. Laws 1929, § 14010), amending section 12353, 3 Comp. Laws 1915, relating to "parties to actions," which provides:

"That where an assignment of a part of a cause of action in tort has been made by an insured to an insurer, both assignor and assignee may join in an

action on such claim, and a joint judgment shall be rendered for all the damages to which either or both may be entitled."

It follows that the trial court was in error in directing a verdict for the defendant. The judgment entered thereon is reversed, with costs to plaintiff, and a new trial ordered.

Butzel, C. J., and Wiest, Clark, McDonald, Potter, North, and Fead, JJ., concurred.