RAY WANN, Respondent, v. ST. LOUIS-SAN FRANCISCO RAILWAY
COMPANY, a Corporation, Appellant, No. 43593—263 S. W. (2d)
376.

Division Two, December 14, 1953.
Motion for Rehearing or to Transfer to Banc Overruled, January 11, 1954.

*James L. Homire, C. H. Skinker, Jr.* and *W. W. Dalton* for appellant.

*Mark D. Eagleton* and *Leland Jones* for respondent.

494

■ BARRETT, C.—In this action under the Federal Employers' Liability Act a jury found that the plaintiff, Ray Wann, was injured by reason of negligence on the part of his employer, the St. Louis-San Francisco Railway Company and, accordingly, awarded him $31,000.00 damages. On January 30th, 1951, about seven o'clock in the ■ evening, a hostler placed an all purpose type Diesel engine on the north or third track in the old Diesel shop and left it with the engine and generator running. Reed, a machinist-inspector, met Wann on the ramp in the new Diesel shop and informed him that the Diesel was "in the house and that it was smoking and I should go see about it." Wann went into the old Diesel house, crossed to the third track, entered the engine cab and walked east into the generator room. There, as he looked and saw that "it wasn't firing enough to ignite the fuel," he was overcome by smoke and fumes and as he attempted to alight from the engine fell from the cab door and was injured. Wann's right to recover was submitted upon the theory that the railroad was negligent in that it had failed to exercise ordinary care to furnish him a reasonably safe place to work. The negligence specifically hypothesized and submitted was that the plaintiff, in the scope and course of his employment,

" - - - entered the cab of Engine No. 500 and the steam generator room located therein, and if you further find that in said generator room large quantities of smoke and fumes were being

emitted therefrom, and that plaintiff was thus and thereby caused to be overcome by said smoke and fumes and .to collapse and fall and sustain injuries as a direct and proximate result thereof; and if you further find that the defendant, acting through its employees, did place said engine then and there emitting said smoke and fumes * * * inside said old Diesel switch engine shop, and that the defendant, acting through its said employees, did fail to warn the plaintiff of the fact * * * that large quantities of smoke and fumes were being thus emitted in said generator room, *when* said *defendant,* acting through its said employees *knew, or by the exercise of ordinary care on their part would have known, that the ventilation in said old Diesel switch engine shop and in said Engine #500 was inadequate to dissipate and remove said smoke and fumes,* if you so find, *and that plaintiff's place of work* * * * *was thus and thereby made unsafe and dangerous, and not reasonably safe,* if you so find, and that in thus furnishing said place of work to the plaintiff under the circumstances aforesaid * * * the defendant did then and there fail to exercise ordinary care and was guilty .of negligence, and * * * that plaintiff was injured as a direct and proximate result of said negligence on the part of said defendant, then your verdict must be in favor of the plaintiff and against the defendant herein.''

The sole question upon this appeal is whether there is any evidence to support the submitted hypothesis and the jury's finding. In contending that there is no evidentiary basis for a finding of negligence the appellant railroad points to the rules, that it is not an insurer of the safety of its employees, and that mere proof of an injury or the happening of an accident will not support an inference of negligence. It is said that a railroad is only required to make its place of work and appliances reasonably safe for the purposes and in the circumstances in which they are used and is not bound to make its premises and equipment ''fool proof'' or provide the latest and most perfect appliances and is not bound to discard standard appliances or reasonably safe facilities. Atlantic Coast Line R. Co. v. Dixon, 189 F. (2) 525; Atlantic Coast Line R. Co. v. Craven, 185 F. (2) 176. It is argued that the railroad is not required to anticipate the employee's lack of care for his own safety and that it is not liable for a temporary condition brought about by his negligent use of the facilities provided and, here, that it had no duty to warn Wann of the conditions complained of because they were obvious and known only to him. Missouri Pac. R. Co. v. Aeby, 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351; Fore v. Southern Ry. Co., 178 F. (2) 349; Wolfe v. Henwood, 162 F. (2) 998. It is urged, in view of these rules, that the jury could only have found for the plaintiff by resort to mere speculation and conjecture and that the evidence shows that Wann's injuries were caused solely by his own negligence. On the other hand, the

respondent urges that "even close and doubtful cases arising under this legislation are to be submitted to the jury," and that the judgment is to be affirmed if there is any substantial evidence to support the verdict. Bailey v. Central Vermont Ry. Co., 319 U. S. 350, 63 S. Ct. 1062, 87 L. Ed. 1444; Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, 63 S. Ct. 444, 87 L. Ed. 610; Lavender v. Kurn, 327 U. S. 645, 66 S. Ct. 740, 90 L. Ed. 916; Wilkerson v. McCarthy, 336 U. S. 53, 69 S. Ct. 413, 93 L. Ed. 497. It would serve no useful purpose to again analyze and distinguish the cases relied upon by the parties, it is sufficient to note that this court is familiar with these cases and the general rules, and the determinative question here is whether "reasonably fairminded men" (Lavender v. Kurn, supra) could draw different inferences from the facts and circumstances in evidence, if so the railroad's breach of its duty to furnish Wann a reasonably safe place to work was for the jury. Hatfield v. Thompson, (Mo.) 252 S. W. (2) 534; Winters v. Terminal R. Ass'n., 363 Mo. 606, 252 S. W. (2) 380; Thompson v. Thompson, 362 Mo. 73, 240 S. W. (2) 137; Moore v. Cheasapeake & Ohio R. Co., 340 U. S. 573, 71 S. Ct. 428, 95 L. Ed. 547; Tennant v. Peoria & Pekin Union R. Co., 321 U. S. 29, 64 S. Ct. 409, 88 L. Ed. 520.

In actions of this type, involving facilities furnished and the condition of premises and whether they constitute a reasonably safe place to work, the test of ultimate liability is "that negligence, within the meaning of the Federal Employers' Liability Act, attached if respondent 'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees." Urie v. Thompson, 337 U. S. 163, 178, 69 S. Ct. 1018, 1028, 93 L. Ed. 1282, 1297; Frizzell v. Wabash R. Co., 199 F. (2) 153, 155. In the Frizzell case, and in Atlantic Coast Line R. Co. v. Craven, supra, and in Fore v. Southern Ry. Co., 178 F. (2) 349, it was not foreseeable by a reasonably prudent person that the prevalent facilities and standards—a set-off for handcars, a switchyard, and the removal of a nut from a bolt with a wrench—were inadequate. Here there was no evidence by either the appellant or the respondent as to the relative standards of ventilation of engine work shops or of Diesel engines on this or other railroads. In Pennsylvania Pulverizing Co. v. Butler, 61 F. (2) 311, the employee charged negligence in failing to use reasonable care to provide a ventilating system to control the dust, but it was said that proof of dust "without proof that the defendant could and therefore should have provided efficient means to overcome it is not substantial enough to be controlling on the averment that it was negligent in failing 'to use reasonable care to provide a proper ventilating system.' * * * the plaintiff in this case, though recognizing the rule of 'reasonable care,' assailed the defendant's system of ventilation (as involving negligence) by proof of dust in large quantities here and there, not

by proof of other mechanism or means known to the industry or to the science of hygiene by which the dust could be controlled more effectively. So the plaintiff's evidence not only failed to prove (by showing better instrumentalities) that the defendant's ventilating system might have been better but, for the same reason, it stopped short of proving it was not such a system as by the exercise of reasonable care could and should have been furnished.''

The railroad's defense to this action was that its facilities were adequate and that it was not negligent (McGivern v. Northern Pac. Ry. Co., 132 F. (2) 213, 217) with respect to the ventilation of either the old engine shop or the generator room in the locomotive. While there was no evidence as to prevalent standards, the railroad's division engineer described the old Diesel house. He testified that there were three front doors, 17 x 14 feet 8 inches, and a back door, 19 x 11 feet 4 inches, all large enough to accommodate a Diesel locomotive. There were two sets of windows and eight monitor windows on the north side. All the doors and windows could be opened in the usual manner by one person. There were 180,990 cubic feet of air space in the Diesel house and 1787.4 square feet of open door and window space. This man said that the open windows would create a draft in the engine room. It was his opinion that the ventilation was adequate and that when the shop doors and windows were open the building was virtually a shed or pavilion. There were 396 cubic feet of space in the generator room on the engine and 29.75 square feet of open space when its two doors and a ventilating door inside the cab were opened.

The new Diesel shop adjoins the old shop, in fact one of the walls of the old shop is the partition wall between the two shops. The new Diesel shop, in addition to its doors and windows, is equipped with suction fans. There are no suction fans or other ventilating devices in the old shop. In the partition wall between the two shops there is a series of closed, stationary windows and the inference from the plaintiff's evidence is that these windows could and should have been removed to the end that the suction fans in the new building could have some effect in the old. At shop safety meetings the plaintiff and others had complained of the smoke and lack of ventilation in the old Diesel house. The foreman in charge of the safety meetings denied that Wann had complained but said that others had reported the smoke ''a few times,'' might have been three times. The machinist-inspector, a railroad witness, said that after Wann entered the old Diesel shop there was smoke ''All over. I went to the door myself to get out of it. * * * I do that regular. I won't stay where it is at.'' This man said, ''I have heard it complained of lots of times, yes, sir.''

The railroad's contention that the condition was temporary and of Wann's own creation is based upon his failure to open the doors and windows in the old Diesel shop, as he passed them, on his way to the

engine, and his failure to open the doors to the generator room on the locomotive. But the ventilation or lack of it was not temporary or of the employee's own creation as was the oil on the engine deck or the snow and ice permitted to accumulate on the engine's footboard in Thompson v. Thompson, supra, and McGivern v. Northern Pac. Ry. Co., supra. Nor, aside from Wann's failure to open the doors and windows, can it be said that he voluntarily adopted his own dangerous methods of performing a task so that his own negligent conduct was the sole proximate cause of his injury as was the case in Wolfe v. Henwood, supra, and Atlantic Coast Line R. Co. v. Craven, supra. The condition complained of, except failure to open the doors and windows, was not a temporary condition of which the employee had as much or more knowledge as the employer as was the station agent's icy platform at Magness, Arkansas. Missouri Pac. R. Co. v. Aeby, 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351. Wann's failure to open the doors and windows in the shop and on the locomotive may have constituted contributory negligence, or it may have been a risk that he assumed, but the ventilation or lack of it was more or less permanent and if inadequate actually known to the railroad. Hatfield v. Thompson, supra; Wilkerson v. McCarthy, supra.

By reason, apparently, of the rules of the various crafts a hostler may place an engine in the shop but he may not start or stop the engine or cut the generator off, "That comes under the jurisdiction of the shop mechanics." One foreman said that he did not tell Wann to repair the engine or generator, he merely told him to cut it off. While the inspector said that he had no authority as Wann's "boss," that was the business of foremen, he told him of the engine's presence, with the smoking generator, so that he could do whatever was necessary to correct the generator's smoking. Wann said that after the inspector notified him that the engine was in the old Diesel shop he entered the building through a small door and "there was some smoke in there," no more, however, than he had observed on other occasions. He said that he did not open the shop doors "Because I didn't see any more danger than I had seen in other times." He entered the locomotive and there was smoke in the cab but not an excessive amount. He went through the generator room door and there was "Lots of smoke" in the generator room. He did not open the doors or cowlings on the locomotive because it did not seem necessary in the cab. There was a switch on the outside as he entered the cab but he did not cut it off "Because you have to have the motor running in order to make your test." He said, "I begin to get overcome" by the smoke and fumes in the generator room and after two or three seconds "I was trying to work my way out" when "I got to the cab door, which leads to the outside and I taken a hold of the rail. Then I just went out. I was overcome there so much that I didn't know what happened until I hit below."

As a matter of fact what we have heretofore said concerning the facts and circumstances is preliminary to the essential and determinative question upon this appeal, and that is the railroad's ultimate liability with respect to the ventilation in the old shop and the locomotive. In short, the precisely determinative question is whether the inference of negligence with respect to the ventilation's rendering the old Diesel shop an unsafe place to work is a fair and reasonable one, all the circumstances considered, within the meaning of the Federal Employers' Liability Act. We are not concerned here with liability under the Safety Appliance Act (Thompson v. Thompson, supra) or under the Boiler Inspection Act (Lyle v. Atchison, T. & S. F. Ry. Co., 177 F. (2) 221) or with the breach of or compliance with a specific standard prescribed by statute. Annotation 159 A. L. R. 870; Smith v. Harbison-Walker Refractories Co., 340 Mo. 389, 100 S. W. (2) 909. We are concerned here solely with "negligence" under the act, "the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done." Tiller v. Atlantic Coast Line R. Co., 318 U. S., l.c. 67, 63 S. Ct., l.c. 451, 87 L. Ed., l.c. 617. The leading and most thoughtfully considered opinion upon the subject of ventilation as negligence is Pevesdorf v. Union Electric L. & P. Co., 333 Mo. 1155, 64 S. W. (2) 939. There the negligence submitted was that an employer furnished an unsafe place in which to work in that a garage was operated and maintained "without defendant providing and maintaining open outlets to the outside air and without providing an exhaust fan or other means of ventilation so that fresh air would enter and stale air and gases go out of said garage, by reason whereof noxious fumes containing carbon monoxide gas" escaped from automobiles and injured the plaintiff, resulting in his having epilepsy. It was held that the plaintiff's evidence was not sufficiently substantial to show that the natural ventilation was insufficient if properly used in warm weather. But even as to warm weather the court said, "However, ordinary care requires not only sufficient means of ventilation but a sufficient use of such means." In that case there was, in addition to natural ventilation, a ventilating system which had been changed upon the complaint of employees but the court was, nevertheless, of the opinion, in all the circumstances, "that plaintiff had sufficient evidence to require submission to the jury of the issue of negligence in providing ventilation." The facts and circumstances in the instant case are certainly as indicative of negligence as the facts in the Pevesdorf case. In Enger v. Great Northern Ry. Co., 141 Minn. 86, 169 N. W. 474, a machinist in a railroad roundhouse fell into a concrete engine pit due to steam from a locomotive. There was evidence of a practical method for carrying the steam out of the roundhouse and it was held that the railroad's

negligence and liability was for the jury. Other cases indicating that the inference of negligence, in the circumstances of this case, was for the jury to determine are Brennecke v. Ganahl Lumber Co., 329 Mo. 341, 44 S. W. (2) 627; Sweany v. Wabash Ry. Co., 229 Mo. App. 393, 80 S. W. (2) 216; Olchefsky v. Mercier, Bryant, Larkins Brick Co., 240 Mich. 536, 215 N. W. 317; Downing v. Oxweld Acetylene Co., 112 N. J. L. 25, 169 Atl. 709; Urie v. Thompson, supra. For contrasting instances in which the evidence repelled the inference of negligence or was insufficient to support the inference of negligence with respect to an unsafe place to work by reason of the insufficiency or inadequacy of the ventilation. see Pennsylvania Pulverizing Co. v. Butler, supra; Canonico v. Celanese Corp. of America, 11 N. J. Super. 445, 78 Atl. (2) 411. Upon the record in this appeal, negligence in furnishing an unsafe place to work by reason of the inadequacy or insufficiency of the ventilation being a jury question, the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.