# MISSOURI PACIFIC RAILROAD COMPANY v. AEBY.

## CERTIORARI TO THE SUPREME COURT OF MISSOURI.

No. 100. Argued December 1, 1927.—Decided January 3, 1928.

1. A station platform intended for use and used by a station agent in the performance of his duties, is part of the "works" of the railroad company within the meaning of the Federal Employers' Liability Act, § 1. P. 428.
2. A case under the Act is governed by it and the applicable principles of common law as applied in federal courts; and there is no liability in the absence of negligence on the part of the carrier. P. 429.
3. A railway station platform, composed of loose gravel and crushed stone, became worn and depressed in front of steps leading from the station, due to rainwater falling from the roof and draining from the platform and to the passage of people to and from the waiting room. Water accumulated in the depression when it rained, and on the night in question, a puddle, so formed, was frozen and covered with snow. Plaintiff slipped on the ice while seeking to enter the station house in the dark in pursuit of her duties as station master, and was injured. *Held* that the facts were insufficient to sustain a finding that the railroad company had failed in any duty to the plaintiff. *Id.*

313 Mo. 492, reversed.

CERTIORARI, 273 U. S. 679, to a judgment of the Supreme Court of Missouri, which affirmed a recovery of damages for personal injuries in an action under the Federal Employers' Liability Act.

Mr. *Merritt U. Hayden*, with whom *Messrs. Edward J. White, James F. Green* and *Thomas J. Cole* were on the brief, for petitioner.

Mr. *Patrick H. Cullen*, with whom *Messrs. Thomas T. Fauntleroy, Augustus L. Abbott, John B. Edwards*, and *John C. Vogel* were on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Petitioner is a common carrier of interstate commerce by railroad. Respondent was its station agent at Magness, Arkansas; and, January 13, 1921, while employed in such commerce, fell on the station platform and was injured. She brought this action in the Circuit Court of Saint Louis, Missouri, claiming damages under the Federal Employers' Liability Act, U. S. C., Tit. 45, c. 2, § 51, on the ground that her injuries resulted by reason of a defect or insufficiency in the platform due to petitioner's negligence. The jury returned a verdict, and the court entered judgment thereon, in her favor. Petitioner took the case to the Supreme Court and contended that the platform was not a part of its "works" within the meaning of the Act; that the evidence was not sufficient to sustain a finding that petitioner was guilty of actionable negligence; that respondent assumed the risk, and that her own negligence was the sole cause of her injuries. That court decided all these questions adversely to the petitioner and affirmed the judgment. 313 Mo. 492. Certiorari was granted, 273 U. S. 679.

The Act makes the carrier liable for injuries resulting to its employees by reason of any defect or insufficiency due

to its negligence in " its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." The language is broad and includes things and places furnished by the carriers to be used by their employees in the performance of their work. The platform was intended to be and was used by respondent to do station work. Having regard to the beneficent purposes of the Act, it would be unreasonable to hold that when so used a station platform is not covered by the word " works " in the above quoted provision. The Supreme Court rightly held that the clause applied.

Respondent had lived for years in that part of Arkansas. She was petitioner's ticket agent at Morefield from March 20, 1919, until July 2, 1920; then she became the station agent at Magness and remained in that position until a few days after she was injured. She had charge of the station; did book work; sold tickets; handled mail, baggage, express, etc. She was the only person regularly performing station work; and, for some time before the accident, she lived in the station building. It was a one-story structure 16 feet wide by 48 feet long located south of, parallel to and 10 feet from the track. The waiting room occupied the west end, and adjoining it there was an office having a bay window toward the track. The waiting room door, in front of which were two steps, was just west of the bay window. The platform was made of " chat," described as small gravel and crushed stone. It was something like a cinder path. There were no gutters on the eaves and water falling from the roof made a depression or kind of ditch. The chat was loose and sloped toward the building, and some of the rain falling on the platform, as well as the water from the roof, reached the depression under the eaves and drained past the steps to the west. The depression was about four inches deep; and, by reason of the slope, its bottom was about 12 inches lower than the highest part of the platform. The depres-

sion existed when respondent came to work at Magness, and in front of the steps it was about four feet square. That condition was caused by water and the passage of people going to and from the waiting room. When it rained, there accumulated in this and other depressions on the platform puddles of water which gradually disappeared. By the time of the accident, the depression in front of the steps had become somewhat larger and deeper by reason of rains and constant use. Its surface was rough. No ice had formed there after respondent came. The platform was dry the evening before the accident. During the night it rained, froze and snowed. Respondent and another woman slept in the station. A train was due shortly after six in the morning. They got up about six; it was dark; respondent lit a lamp and also a lantern that was kept for use about the place. They went out and moved the truck from the west end of the building to a place near the track. The steps were covered with snow and ice. There was about three inches of snow on the platform; the truck was frozen to the ground and covered with ice. There was no light on the platform. The lamp and lantern were left inside, and it does not appear that either was placed to give light through the bay-window or otherwise upon or about the steps or platform. Going out, respondent stepped off the west end of the steps. When returning to the waiting room, she approached from the north. There was ice under the snow immediately in front of the steps; she tripped on something rough, slipped, fell and was injured.

This case is governed by the Act and the applicable principles of common law as established and applied in federal courts. There is no liability in the absence of negligence on the part of the carrier. *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 501; *New York Central R. R. Co.* v. *Winfield*, 244 U. S. 147, 150. Its duty in respect of the platform did not make petitioner an insurer of re-

spondent's safety; there was no guaranty that the place would be absolutely safe. The measure of duty in such cases is reasonable care having regard to the circumstances. *Patton* v. *Texas & Pacific Railway Co.*, 179 U. S. 658, 664; *Washington &c. Railroad Co.* v. *McDade,* 135 U. S. 554, 570; *Tuttle* v. *Milwaukee Railway,* 122 U. S. 189, 194. The petitioner was not required to have any particular type or kind of platform or to maintain it in the safest and best possible condition. *Baltimore & Ohio R. R. Co.* v. *Groeger,* 266 U. S. 521, 529. No employment is free from danger. Fault or negligence on the part of petitioner may not be inferred from the mere fact that respondent fell and was hurt. She knew that it had rained and that the place was covered with ice and snow. Her knowledge of the situation and of whatever danger existed was at least equal to that chargeable against the petitioner. Petitioner was not required to give her warning. *National Biscuit Co.* v. *Nolan,* 138 Fed. 6, 12. It is a matter of common knowledge that almost everywhere there are to be found in public ways and on private grounds numerous places in general use by pedestrians that in similar weather are not materially unlike the place where respondent fell. Under the circumstances, it cannot reasonably be held that failure of petitioner to remove the snow and ice violated any duty owed to her. The obligation in respect of station platforms and the like owed by carriers to their passengers or to others coming upon their premises for the transaction of business is greater than that due their employees accustomed to work thereon. The reason is that the latter, familiar with the situation, are deemed voluntarily to take the risk of known conditions and dangers. *Tuttle* v. *Milwaukee Railway,* 122 U. S. 194. The facts of this case, when taken most favorably to the respondent, are not sufficient to sustain a finding that petitioner failed in any duty owed

to her. *Nelson* v. *Southern Ry. Co.*, 246 U. S. 253. As negligence on the part of the petitioner is essential, we need not consider its contentions in respect of assumption of risk and negligence on the part of respondent.

*Judgment reversed.*