LUCK *v.* LOUISVILLE & N. R. Co.

(*Nashville.* December Term, 1933.)

Opinion filed March 31, 1934.

E. J. HARRIS, of Bolivar, for plaintiff in error.

JOHN S. DANIEL, of Clarksville, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Plaintiff was an employee of the defendant railroad, engaged as a laborer in connection with railroad bridge construction and repair work. He sues under the Federal Employers' Liability Act (45 U. S. C. A., sects. 51-59) for injuries to his spine and kidneys caused by a strain to the back, suffered while engaged with other

workmen in loading boxes on a train from a platform. He alleges in this declaration that while so engaged his foot slipped in or on grease, or oil, on this platform, which was wet after rain, and that the railroad was actually negligent in failing to provide a safe place for him to work—specifically in allowing this grease or oil to be and remain on this loading platform. At the close of plaintiff's proof, the trial judge sustained a motion of the defendant for a directed verdict and dismissed the suit. The Court of Appeals has reversed and remanded, holding that the case should have been submitted to the jury on the issues of contributory negligence and assumption of risk. The court also considered and overruled the insistence of the railroad that the plaintiff was not at the time employed in interstate commerce. On this second question we agree with the Court of Appeals, although the issue becomes immaterial to the defense in view of the conclusion we have reached on the issue of assumed risk, as to which we are constrained to· concur with the trial judge.

However, first, it should be observed that we are disposed to the view that no actionable negligence is shown on the part of the defendant with respect to the place of work. It appears that the repair work on the bridge over Wolfe creek had been going on some weeks or months, and that, according to custom, a loading platform of stone, timbers, and boards, although for temporary use, that is, during the progress of this particular bridge work, had been erected and was maintained near the bridge on the edge of the railway track, onto which articles used in the work were unloaded from trains and upon which some of such materials were kept for convenient use, among others, such being barrels or drums

of oils, paints, and grease. From these receptacles, from day to day as required, these liquids and semi-liquids, dipped in cans and buckets, were conveyed to the bridge near at hand. This use of the platform and handling of these materials was well known to plaintiff, who was himself engaged in assisting about the premises and in handling grease, oil, and paints, either in applying or wiping them from portions of the bridge work.

On the occasion of the injury, plaintiff had been summoned to assist in loading on a train a number of more or less weighty boxes containing bolts, screws, and other heavy articles, for shipment to other points, Louisville, Kentucky, and Brownsville, Tennessee, being two points named. It had been raining and it was, of course, obvious that the platform was wet. The evidence is uncontradicted that the platform was free from any defect in its construction or location, and that it was similar to others in common use and with which plaintiff, in his six years of service, was thoroughly familiar. Its use in part for the storage of the oils and greases was also customary and known to plaintiff. The negligence charged consisted only in the accumulation on this platform of occasional and slight, according to the evidence, spillings of these materials incident to the dipping thereof out of the barrels with buckets. It is a matter of common knowledge that such drippings or spillings incidentally, and naturally, indeed necessarily occur. This happening can hardly be characterized as actionable negligence, nor could a failure promptly to clean off such drippings, certainly until and unless the accumulation became unusual and so appreciable as to suggest danger to those engaged in working with these very materials. No such condition is suggested by the

proof. On the contrary, the theory of the plaintiff, in part, is that these deposits were so slight as not to have been observed by him until he made an examination after his foot slipped while engaged in loading onto the train one of the boxes mentioned. In order to repel an implication of knowledge fatal to his right of recovery under the doctrine of assumed risk, plaintiff sought to disclaim notice or observation of this grease condition. In doing so he practically acquits his employer of negligence in this regard. Unless the accumulation under the circumstances had been permitted to such an extent as to be readily observable, the place of work, otherwise confessedly safe, was not rendered unsafe thereby so as to make the employer liable.

But however this may be, and if it be conceded that this platform was an unsafe place for work for this employee in the regard mentioned, and if it be conceded that the employer was chargeable with notice thereof, and that, as a result, a risk, in a legal sense existed, we think it inescapable that this plaintiff, constantly and habitually over a long period engaged thereabouts, assumed whatever risk existed. He is in no better position than if his foot had slipped in grease or oil on or about the bridge timbers, or irons, on which he daily worked, or on the rails over which he constantly passed. It was distinctly a part of his employment to work on and about railway construction in which such materials were constantly used and which he himself handled. This platform was a part of his place of work, a work of construction calling for constant care in his movements, and particularly in the selection of his footings. Loose bits of iron, wood, or steel, unfinished or unconnected parts, loose tools, and scattered materials are natural and neces-

sary and, of course, well-known incidents of such work, and the risk of stumbling over or slipping on them is one as to which the workman must be constantly on his guard.

The assumed risk doctrine recognizes two classes—one the ordinary risks and hazards of the particular occupation; and, two, those defects and risks which though extraordinary are known to the employee, or are plainly observable, although due to some degree of the master's negligence. *Schlemmer* v. *Buffalo, R. & P. R. Co.,* 220 U. S., 590, 31 S. Ct., 561, 55 L. Ed., 596. As indicated, as to this second extraordinary risk class, the employee is held to have assumed the risk only when he has knowledge of the defect and the dangers arising therefrom, or when so obvious that an ordinarily prudent person under similar circumstances would know the risk and appreciate the danger of it.

We are of opinion that this case falls clearly within the first class, the ordinary risk incident to the particular employment, although it would not be difficult to apply, on the evidence here, the second rule also, for all the proof is that the storing of these wells, or barrels, of grease and oils on this small platform, sixteen feet by four or five feet, and the dipping therefrom in buckets, was a constant practice and known to all; and it requires no direct testimony, although this was shown, to establish that these liquids would spill and did spill on the platform. But, there is no controversy on this record as to those facts on which we rest the conclusion of law that the risk in this case was of that ordinary class incident to the particular employment, which the employee assumes.

Among other authorities in point are *Jacobs* v. *Southern Railway Co.*, 241 U. S., 229, 36 S. Ct., 588, 60 L. Ed., 970, a case of stumbling over a pile of cinders near a track; *Standard Knitting Mills* v. *Hickman*, 133 Tenn., 43, 179 S. W., 385, a case of slipping on a freshly soaped floor; *Southern Railway Co.* v. *Hensley*, 138 Tenn., 408, 198 S. W., 252. This suit being brought under the Federal Employers' Liability Act (45 U. S. C. A., secs. 51-59), federal decisions are particularly pertinent, and the following expressions from the opinion in *Missouri Pac. Railroad Co.* v. *Aeby*, 275 U. S., 426, 48 S. Ct., 177, 179, 72 L. Ed., 351, holding that plaintiff had assumed the risk, a case in which a station master slipped and fell on ice which had accumulated near the station door which she was entering, are directly in point:

"This case is governed by the act and the applicable principles of common law as established and applied in federal courts. There is no liability in the absence of negligence on the part of the carrier. . . . Its duty in respect of the platform did not make petitioner an insurer of respondent's safety; there was no guaranty that the place would be absolutely safe. The measure of duty in such cases is reasonable care, having regard to the circumstances. . . . The petitioner was not required to have any particular type or kind of platform, or to maintain it in the safest and best possible condition. . . . No employment is free from danger. Fault or negligence on the part of petitioner may not be inferred from the mere fact that respondent fell and was hurt."

■ It is argued for defendant railroad that the Court of Appeals should have affirmed the trial judge, even though finding material evidence to support plaintiff's case, the clear preponderance being with the railroad,

this on the theory that, in cases arising under the federal act, the federal trial practice should be followed in the state court, under which the trial judge may dispose of the case on the weight of the proof. It is said that the holding of this court in *Brenizer* v. *N., C. & St. L. Ry.*, 156 Tenn., 479, 3 S. W. (2d), 1053, 8 S. W. (2d), 1099, to the contrary has later been disapproved, in effect, by the United States Supreme Court in two cases, decided since the *Brenizer Case, Western & A. R. R.* v. *Hughes*, 278 U. S., 496, 49 S. Ct., 231, 73 L. Ed., 473, *Chesapeake & O. Railway Co.* v. *Kuhn*, 284 U. S., 44, 52 S. Ct., 45, 76 L. Ed., 157. Neither of these cases went up from Tennessee, and the constitutional provisions, held in the *Brenizer Case* to be controlling in this jurisdiction, were not considered. However, we find it unnecessary to pass on this question, since we are of opinion that there was no material evidence to support a recovery for the plaintiff in this case, and that the trial judge, under either practice, was correct in directing the verdict. The judgment of the Court of Appeals is reversed and the suit dismissed.