## Yazoo & M. V. R. Co. *v.* Sudduth.

(Division B. Nov. 19, 1934. Suggestion of Error Overruled Jan. 14, 1935.)

[157 So. 527. No. 31429.]

Dent, Dent & Robinson, of Vicksburg, Bozeman & Cameron, of Meridian, and Burch, Minor & McKay, of Memphis, Tennessee, for appellant.

**Reily & Parker**, of Vicksburg, for appellee.

**R. M. Kelly** and **Chaney & Culkin**, all of Vicksburg, for appellee.

Argued orally by **H. D. Minor**, for appellant, and by **Marion W. Reily**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of Lauderdale county, as administratrix of her deceased husband, J. C. Sudduth, to recover damages for his death, alleged to have been wrongfully caused by appellant while Sudduth was in its employ in the capacity of head brakeman. The trial resulted in a verdict and judgment in the sum of thirty-five thousand dollars. From that judgment, appellant prosecutes this appeal.

At the time of the injury and death of Sudduth, appellant's freight train, on which he was working as head brakeman, was engaged in interstate commerce, therefore he was employed in interstate commerce, and the case

is therefore governed by the Federal Employers' Liability Act (45 U. S. C. A., secs. 51-59), and the applicable principles of law as interpreted by the federal courts. Seaboard Airline R. R. Co. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Missouri Pacific R. R. Co. v. Aeby, 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351; Mobile & Ohio R. R. Co. v. Clay, 156 Miss. 463, 125 So. 819.

We have concluded that the court below erred in refusing appellant's request for a directed verdict. In stating the facts of the case, therefore, we shall put them most strongly for appellee. There is no real conflict in the material evidence.

Sudduth's injury, from which he died the next day, occurred about 7:40 P. M. on November 9, 1931, therefore, after dark. He was head brakeman on one of appellant's freight trains on its main line of railroad running from Memphis, Tennessee to New Orleans, Louisiana. He had been one of appellant's freight train conductors before, and in those capacities he had been in its employ for about eighteen years. Appellant's main line railroad runs through the town of Harriston in this state, where Sudduth was injured, and there it crosses its Natchez-Jackson branch. Harriston is an unincorporated village. On account of the crossing of the two lines, a good deal of switching and interchange of cars is done there. Fifteen or twenty car lengths south of Harriston appellant's main line crosses a bridge over a creek; the length of the bridge is about two hundred feet and its width about fifteen feet. On the east side of the bridge there is a walkway from one end to the other. On the west side there is no walkway. There is no way to alight from the west side of a train while standing on the bridge. The freight train on which Sudduth was head brakeman at the time of the injury consisted of fifteen cars, engine, and tender. It was going south.

Atkinson, who did not testify on the trial, having died, was engineer on the train on which Sudduth was head brakeman, and Moore was fireman. The injury resulting in Sudduth's death occurred just south of Harriston on the two hundred-foot bridge. Day was conductor and Riggin was rear brakeman. Atkinson was in his seat on the right side of the cab of the engine. Sudduth was in his seat on the left, and Moore, the fireman, was in his seat immediately behind Sudduth. The conductor, Day, and brakeman, Riggin, were in the caboose. Immediately after pulling out from Harriston, either the conductor or the rear brakeman discovered on inspection of the air gauge that the air had been cut. The conductor instructed the brakeman to signal the engineer to stop, which the brakeman did. The signal was given on the west or righthand side of the train going south. The engineer saw the signal and proceeded to stop the train. When he saw the signal, he remarked, which remark was heard by Sudduth and the fireman, "They have flagged me down." Thereupon Sudduth took his lantern which was lighted, walked by the fireman in a northerly direction, then toward the west side of the cab. That was the last time he was seen until after the injury. Immediately afterwards he was found in the bed of the creek where he had fallen. The injury from the fall resulted in his death the next day.

The evidence of the fireman was the only evidence as to how Sudduth left the cab, and the surrounding conditions at the time. He testified that he did not see Sudduth get off the engine, that so far as he knew he might have alighted from the steps, he might have stumbled while still in the cab and lost his balance and fallen therefrom, or he might have tripped and fallen, due to his own carelessness. However, the evidence showed that he must have alighted from the west side—the side on which there was no walkway—because if he had alighted on the east side—where there was a walkway—he would not have fallen to the bed of the creek.

The engine had an electric headlight that was in good condition shining south down the track. The cab had at least three lights, one over the engineer's seat on the west side, one over the seats occupied by Sudduth and the fireman on the east side, and one back of them over where the fireman stood when stoking the furnace. The evidence also showed that the headlight of the engine not only revealed the track south but some distance on each side, and that the lights in the cab not only lighted the cab, but shone down on the bridge some distance on each side.

It was the duty of the engineer, in addition to operating the engine, to keep a lookout ahead and also in the rear on his right for signals from the conductor or rear brakeman. It was the duty of Sudduth, as head brakeman, to keep a lookout ahead and to his left to the rear for signals from the conductor or rear brakeman. It was the custom and the duty of the head brakeman, when the engineer received a signal from the rear on his right, to get out on the right-hand side of the train and go back for the purpose of ascertaining and remedying the trouble; while, if the signal came from the other side, it was his duty to get out on that side and go back for the purpose of looking after the cause. When the engineer said, "I am flagged," the evidence showed that meant a request to Sudduth to respond—that it was not necessary for the engnieer to make the request in so many words—and that it was the duty of the head brakeman to heed the request. He was subject to the control and direction of the engineer. There was no evidence to show that either the engineer or the fireman knew that Sudduth was getting out on the right-hand or west side of the train where there was no walkway. All three of them knew, however, that if he did step out on that side, he would step out into space and fall to the bed of the creek. Sudduth was as familiar with the bridge and surroundings as the engineer. For twenty-two months immediate-

ly preceding the injury he had made three hundred sixty-nine trips over this bridge, and furthermore, in his capacity as conductor and head brakeman, he had worked in and around Harriston and back and forth across this bridge time and time again.

The ground of recovery relied on by appellee is this: That when the engineer received the rear signal, he should have assumed that Sudduth might not know that the engine was on the bridge, and, therefore, it was his duty to instruct him not to get off on the right-hand side where there was no walkway but on the left-hand side where there was one. Did the failure of the engineer so to do, under the surrounding facts and circumstances as stated, constitute negligence—or rather, did it make an issue of negligence for the jury? We think not, and the case of Baltimore & Ohio R. R. Co. v. Berry, 286 U. S. 272, 52 S. Ct. 510, 76 L. Ed. 1098, so decides. In that case a freight train stopped at night on a trestle to await the throwing of a switch. The caboose was over the trestle; the conductor and rear brakeman were in the caboose, and neither of them knew that the caboose was on the trestle. The conductor instructed the brakeman to go out and go ahead for the purpose of repairing a hot box on a certain car which had been discovered earlier on the trip, however, he did not require him to alight from the caboose rather than from a forward car not over the trestle. The brakeman took his lantern, stepped from the caboose, and fell into a ravine under the trestle and was injured. The opportunities of observation of the conductor and the brakeman were the same; there was no evidence of any rule or practice making it the duty of the conductor to find a safe landing place for the brakeman before requiring him to alight. The court held that there was no evidence of any breach of duty by the railroad company; on the contrary, that the injury was caused by the negligence of the brakeman himself.

We are unable to distinguish any difference in prin-

ciple between the present case and that case. In the present case both the engineer and Sudduth knew of the danger, while in that case neither the conductor nor the brakeman knew of the danger. In neither case was there any fact or circumstance to put the superior employee on notice that his subordinate might be injured in alighting from the train and therefore should be warned against the danger.

Reversed and judgment here for appellant.