### RAUDENBUSH v. BALTIMORE & OHIO R. R.

**Civ. A. No. 3777.**

District Court, E. D. Pennsylvania.

Nov. 21, 1945.

See, also, 4 F.R.D. 171.

B. Nathaniel Richter, of Philadelphia, Pa., for plaintiff.

J. H. Ward Hinkson, of Chester, Pa., and Howard Burtt, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This action was brought by plaintiff as administratrix under the provisions of the Safety Appliance Acts, 45 U.S.C.A. §§ 1–16, the Boiler Inspection Acts, 45 U.S. C.A. §§ 22, 23, and the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for the death of the decedent, her husband, which occurred as a result of injuries sustained on February 2, 1944, in the course of his employment as a brakeman for the Baltimore & Ohio Railroad, the defendant. There is no question that the decedent came within the coverage of the Acts in so far as interstate commerce is concerned.

Upon the presentation of the plaintiff's case, the defendant moved for a directed verdict, which motion was denied. The defendant not having additional evidence to offer, and its request for binding instructions having been denied, the cause was submitted to the jury accordingly. A verdict was returned for the plaintiff, awarding damages in the amount of $9,000.

The defendant now moves for a judgment n. o. v., basing the motion upon alleged error of the Court in submitting two issues to the jury's consideration. The issues presented for determination at this time, therefore, are narrow.

A statement of the admitted facts and allegations at this point is a desirable preface to the statement of the alleged errors.

The accident which resulted in the death of Valentine Raudenbush occurred in the progress of a shifting operation in the defendant's East Side freight yards at 36th and Jackson Streets, in Philadelphia, at about 10:53 p. m. on February 2, 1944. This operation consisted in the shoving of nine freight cars in on a track referred to as "short 29", coupling them to five cars already there, and awaiting the arrival of train No. 97 from the Delaware river piers, to which the train of 14 cars was to be coupled.

The crew for this operation was comprised of an engineer, Meehan, a fireman, Sheffield, a conductor, Steward, and two brakemen, Lane, and the decedent: The crew, except for the engineer, who operated on hand signals, was instructed by conductor Steward to accomplish the operation described.

Keeping in mind that the jury found for the plaintiff, the circumstances surrounding the decedent's fatal injuries are as follows. When the nine cars had been shoved onto "short 29" and coupled to the five already there, the rear brakeman, Lane, signalled the engineer an "O. K." with his lamp and began walking west toward the engine. The train lay in an east-west position, the engine being west of the freight cars. The conductor, Steward, was walking toward the yard office for further instructions when he stopped to talk to a yard foreman. At about that time, he noticed a slack signal given to the engineer by Raudenbush, for the purpose of enabling Raudenbush to uncouple the engine from the train. The engine, when cut, moved back about 10 to 15 feet to lay there, but the cars began to roll eastward at the rate of about a half mile per hour. Lane noticed the movement, climbed onto the second car from the engine, a box car, and proceeded across the catwalk with the intention of applying the brake at the west end of the car. The conductor had shouted to the engineer to couple up again, and ran alongside the engine just in front of it. As the engine began to move, the bright headlight facing the train of cars was turned on. Raudenbush had run to the east end of the first car from the engine, a gondola, apparently to set the brake there. As the light came on, Steward, running before the engine, noticed a form under the gondola and immediately signalled the engine to stop. Lane succeeded in stopping the rolling cars, although they had moved one car length before the brake was applied and about two after. Lane, it should be noted, saw a lamp falling between the east end of the gondola and the west end of the box car at about the time he reached the brake of the latter car.

When the engine and freight cars stopped, the body of Raudenbush lay between the tracks about two car lengths

east of the engine, and about one and a half car lengths west of the first car, the gondola. Raudenbush was taken to the hospital where he died shortly afterward.

There had been a light snowfall the evening of the accident, ending at about 9:30 p. m. This left a thin layer of snow on the brake step or sill of the gondola, and there were skid marks on this brake step or sill. The plaintiff also attempted to prove that there was ice under this thin layer of snow. Although repetitious, it is important to note that the headlight of the engine was not turned on until Steward shouted to the engineer to move ahead to couple again.

At this time, the contention of the plaintiff is that the decedent slipped on the brake step, and that the proximate cause of the accident was the presence of ice or snow on the step as well as the failure of the engineer to have the engine headlight on so as to permit the decedent to see.

It was left to the jury to determine whether there was ice or snow on the gondola brake sill, whether the defendant was negligent in failing to remove the ice and snow if any were there, and whether the presence of either element was a proximate cause of the accident. It was also left to the jury to determine whether the engine light should have been on, and if whether the failure of the engineer to have the headlight on was a proximate cause of the accident. The jury was charged in so far as we are here concerned, with returning a verdict for the plaintiff either if it found that the presence of ice or snow was the proximate cause of the accident and that the defendant was negligent in failing to remove the ice or snow, or if it found that the engine light should have been on and that the failure of the engineer to have the headlight on was the proximate cause of the accident.

The defendant's motion for judgment n. o. v. is predicated on the contention that in view of the evidence, neither issue should have been submitted to the jury: as to the presence of ice, because the evidence was insufficient, and in any event, because the defendant was not under a duty to remove ice or snow from the equipment involved; as to the sufficiency of light, because the engineer was not bound to have the headlight of the engine on, and in any event because the failure to have the headlight

on was not the proximate cause of the accident.

■ As a guide to the disposition of the questions involved, certain well-settled precepts are worth repeating. Under the Federal Employers' Liability Act, the carrier is liable only where its negligence was the proximate cause of the injuries to its employee, or his death, Northwestern Pac. R. Co. v. Bobo, 1934, 290 U.S. 499, 54 S. Ct. 263, 78 L.Ed. 462. In this connection, "The rule as to when a directed verdict is proper * * * is applicable to questions of proximate cause." Brady v. Southern R. Co., 1943, 320 U.S. 476, 483, 64 S.Ct. 232, 236, 88 L.Ed. 239. Negligence is determined by the applicable principles of common law as established and applied by the federal courts. Although it is frequently stated that the employer has a duty to furnish its employers with a reasonably safe place to work, it is more accurate to state that it must use reasonable care to furnish a safe working place, and that duty is a continuing one. Bailey v. Central Vermont Ry., Inc., 1943, 319 U. S. 350, 352, 63 S.Ct. 1062, 87 L.Ed. 1444. But the employer is not the insurer of its employees' safety. Baltimore & O. Southwestern R. Co. v. Carroll, 1930, 280 U.S. 491, 496, 50 S.Ct. 182, 74 L.Ed. 566. However, it should be noted that the common-law concept of "assumption of risk" is completely abrogated by the present Act. Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967.

■■ The plaintiff suing under the Federal Employers' Liability Act, therefore, has the burden of proving against the carrier negligence which was the proximate cause of the injury or death, and in this respect "The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact—in this case, the jury." Brady v. Southern R. Co., supra, 320 U.S. 476 at page 479, 64 S.Ct. 232, at page 234, 88 L.Ed. 239.

In the instant case, the plaintiff sought to prove the presence of ice on the brake sill upon which it is alleged that her decedent slipped. While there was clear testimony of the existence of a thin coating of snow on the brake sill and that skid marks were impressed thereon, the "evidence" as to ice is contained in the fol-

lowing discourse between counsel for plaintiff and Lane:

"Q. I mean was there any snow on this sill? A. A very, very thin coating of snow.

"Q. How about ice? A. I don't recall any ice.

"Q. You don't remember that? A. I don't know whether it was ice or not, it was slippery, a thin coat of snow.

"Q. The thin coating of snow was over the top of the ice that was already there, was it not? A. *I don't know whether there was any ice. I didn't see any ice. All I seen was a thin coating of snow.*

"Q. You were asked this question, were you not; 'Well, you know there was no ice there.' And your answer was: 'There was ice on the car'. Didn't you say that? A. I don't recall whether I said it or not.

"Q. Were you telling the truth, then? A. Oh, yes, that is much closer; this is nearly a year and a half ago now.

"Q. So there was ice on that sill and snow on top? A. There was snow on the sill, a very thin coating.

"Q. That thin coating of snow was over top of it? A. There might have been.

"Q. You said there was? A. It was in February.

"Q. Was there or was there not ice there? A. I don't recall.

"Q. Do you think you were wrong when you gave those depositions? A. No I don't think I was wrong. I gave those depositions to the best of my knowledge.

"Q. You think that your memory then was better than today, don't you? A. This is a year and a half since, and I know there was a thin coating of snow on the sill and on the top of the cars, it had snowed previously, very, very little.

"Q. But you did answer then that there was ice on the car, didn't you? A. I might have said there was ice. I didn't say I didn't see, but I don't recall at present now."

(Emphasis supplied.)

Despite the utmost effort of counsel for plaintiff, Lane's testimony as to the presence of ice on the gondola sill was simply that he did not know whether ice was present, that he didn't see any ice, but that he did see a thin layer of snow. The statement in the deposition referred to that "there was ice on the car" is not inconsistent, for the presence of ice on "the car" does not warrant an inference that there was ice on the sill. Moreover, there is nothing to indicate what car, of the fourteen, or of the first two cars (the gondola and the box car), was meant, and certainly the presence of ice on one car does not establish or warrant an inference that there was ice on another car.

■ I am of the opinion, therefore, that the evidence offered as to ice on the sill of the gondola was insufficient, and that that question should not have reached the jury. Lane's testimony can only mean that he looked and did not see ice, in which case his testimony is evidence that no ice was present, or that he did not look for ice, or that he does not now remember whether he saw ice, in any event, he did not know at the time of the trial whether ice was present.

The question remains, however, whether it was properly left to the jury to determine the negligence, if any, of the defendant in failing to remove the snow, that is, whether the defendant, at the time, was under a duty to do so. The evidence clearly establishes a light snowfall ending approximately an hour before the accident and that there was a thin coating of snow on the brake sill of the gondola, a condition prevailing throughout the yard; on the ground, on the other cars and on the engine. However, there were approximately 900 cars in the yard.

■ While it has been stated as a general rule that a railroad company is not liable to its employees for injuries resulting from climatic conditions, see McGivern v. Northern Pacific R. Co., 8 Cir., 1942, 132 F.2d 213, 217, in view of the rejection of the theory of assumption of risk, I am not inclined to go so far. It would seem to me that the railroad, at least within the limits of its yard, must exercise a reasonable degree of care to prevent accumulations of snow or ice, in such quantity, form and location as to menace the safety of its employees in the performance of their tasks. See Gibson v. Iowa Central Ry. Co., 1911, 115 Minn. 147, 131 N.W. 1057. In the instant case, considering the lightness and the very recency of the snowfall, together with the number of cars in the yard, it is my opinion that at the time of the accident, or previous thereto, the railroad had not come under a duty

to remove the snow from the gondola brake sill.[1] The danger occasioned by the snow was as apparent to the deceased as it was to the defendant and a warning was unnecessary. Cf. Missouri Pacific R. Co. v. Aeby, 1928, 275 U.S. 426, 430, 48 S.Ct. 177, 72 L.Ed. 351. Disregarding any thought that Raudenbush assumed the risk, it is significant that there is no evidence of the failure of the defendant to make available to its employees instruments with which they might remove snow if and when they saw fit. See McGivern v. Northern Pacific R. Co., supra, 132 F.2d 213, at pages 217, 218.

Accordingly, the question of defendant's duty to remove the snow from the brake sill of the gondola ought not to have been submitted to the jury.

Plaintiff further contends that the yard was not a reasonably safe place to work because the engine headlight was not on. The argument is that, had the headlight been on, the decedent would have been able to see the snow on the gondola brake sill. If the engineer were at all obligated to have the headlight on, it must be under Rule 131 of the Interstate Commerce Commission.[2] It may be assumed, for the moment, that the headlight was off in violation of that Rule, but it is not sufficient to show a negligent omission; as I have already said, that negligence must be the proximate cause of the injuries. The general rule is, as repeated in Brady v. Southern R. Co., supra, 320 U.S. at page 483, 64 S.Ct. at page 236, 88 L.Ed. 239: " ' * * * that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.' "

The purpose of Rule 131, as evidenced by the Rule itself, is to enable the engineer to see. Concededly, it also serves the purpose of warning others of the presence or approach of the engine or train.[3] The object of the requirement, therefore, is to prevent accidents arising out of the inability of the engineer, or another, to see the engine or train. It logically follows that if the yard in the instant case was rendered not reasonably safe for work by the lack of the engine headlight, it was not reasonably safe only in so far as it may be said an accident was foreseeable through the inability of the engineer to see, or his engine to be seen. But the accident in controversy did not occur as the result of any movement of the engine, nor was it the result of any inability of the engineer to see, or of any inability of another to see the engine or train. I do not believe that it was foreseeable that the lack of the engine headlight would result in an accident such as occurred here, nor do I think that the accident was a natural and probable consequence of the failure of the engine headlight. There was no more relation between the accident and the assumed negligent omission of the engineer than if the decedent had been injured by an observably defective switch while working within the possible range of another yard engine's headlight, that headlight not being on.

To state the matter another way, the accident here was not the kind of risk

---

[1] Whether it would ever come under such a duty it is not necessary to determine here. The defendant has persuasively argued that such a duty would constitute a serious interference with the movement of the railroad. That consideration may warrant distinguishing, in so far as a duty to remove snow or ice is concerned, between the instant case and the Gibson case, supra, where snow had been shoveled into a pile close to the tracks, thus knocking the brakeman off the car.

[2] "Each locomotive used in yard service between sunset and sunrise shall have two lights, one located on the front of the locomotive and one on the rear, each of which shall enable a person in the cab of the locomotive under the conditions, including visual capacity, set forth in Rule 129, to see a dark object such as there described for a distance of at least 300 feet ahead and in front of such headlight; and such headlights must be maintained in good condition." Code of Federal Regulations, Tit. 49, Sec. 91.131.

[3] See Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967: an employee was hit by a moving train, the engine not having its headlight on in violation of Rule 131; the question was whether the employee would have been made aware of the approachnig train if the headlight were on.

which the rule was promulgated to prevent. It may be noted that all the cases which have been called to my attention in which Rule 131 was involved are cases similar to the Tiller case, footnote 3 supra, where the employee was injured in an accident directly arising out of the inability of the engineer to see or the inability of another to see the engine or train.

Aside from this view, I am of the opinion that under Rule 131, the engineer was not bound to have the engine headlight on at the time of the accident. The engine had been uncoupled and had moved back approximately 15 feet, as the engineer said, to wait for the crew. At that time, the engine was neither in motion nor in use, and, if the headlight had been on, the engineer could have turned it off. The accident happened after the engineer had moved back and stopped.

Accordingly, it is my opinion that the issue, whether the headlight should have been on and whether the failure to have it on was the proximate cause of the accident, ought not to have been submitted to the jury.

It was tersely stated in Brady v. Southern R. Co., supra, 320 U.S. at page 484, 64 S.Ct. at page 236, 88 L.Ed. 239, that "Liability arises from negligence not from injury under this Act. And that negligence must be the [proximate] cause of the injury."

There are numerous cases brought into the courts at every term where negligence cannot be shown, but where it is attempted because of the impoverished condition which the employee or his family can expect. The election to litigate is natural where the choice lies between nothing if suit is not brought and a possible verdict or settlement.

The instant case is in point. The decedent had, unfortunately, uncoupled the engine, which had been acting as a brake, from a train of cars, with the result that the cars began to move. Realizing the emergency, the decedent ran to the nearest brake, and as he jumped for or on the car, he slipped or missed his footing. The accident did not happen because the engine's headlight was not on, or because of a danger which he did not know existed. The only testimony as to the effectiveness of the engine's headlight for the purpose the plaintiff seeks to assert, is that it would blind the crew. Moreover, there was testimony that there was a light suspended from a pole approximately 40 feet away; but, more important, it was clear that the decedent himself was equipped with a lamp. The tragedy occurred in the normal performance of relatively hazardous duties; if those duties were more hazardous than usual, it was the decedent's doing.

The liberal provisions of the present Act are manifestly inadequate to meet the consequences of an accident that is the fault of no one, but which is bound to occur. The only satisfactory remedy lies in Congressional action to make available a form of workmen's compensation which provides some resource for railroad employees and their families who suffer because of a genuine accident. While the Employers' Liability Act is to be construed liberally for the protection of the railroad employees, the court must act upon the law as stated, and not upon the ideals of sympathetic justice. It is not the prerogative of the court to "construe" the existing law so "liberally" as to constitute judicial legislation.

For the reasons stated the motion for judgment n. o. v. is granted.