Charles M. ROSE, Plaintiff,

v.

ATLANTIC COAST LINE RAILROAD COMPANY, Defendant.

Civ. A. No. 66–833.

United States District Court
D. South Carolina,
Florence Division.

Dec. 19, 1967.

Peter D. Hyman, Florence, S. C., T. J. Lewis, Jr., Atlanta, Ga., for plaintiff.

Hugh L. Willcox, Florence, S. C., for defendant.

## ORDER

SIMONS, District Judge.

This is an action commenced by plaintiff against defendant for personal injuries sustained by plaintiff during the course of his employment for defendant on February 4, 1965. Plaintiff's complaint which was filed on December 6, 1966 contains two causes of action set forth as Counts 1 and 2. Count 1 alleges that plaintiff was working for the defendant as a flagman while engaged in interstate commerce and that the issues in such cause are governed by the Federal Employers' Liability Act, 45 U.S.C. Sections 51–60; that the sole proximate cause of plaintiff's injuries which resulted when he started down the ladder of a gondola coal car after releasing the hand brake was caused by defendant's negligence in failing to remove the ice and snow from the freight car and its ladder which caused him to lose his grip on the rungs of the ladder, fall backward from the car, and be injured

as a result thereof; plaintiff's complaint further alleges that defendant was negligent in failing to furnish him a safe place to work, in failing to remove snow and ice from its equipment, and in failing to warn him of the dangerous condition caused by the snow and ice. Count 2 of plaintiff's complaint is based upon the Federal Employers' Liability Act, 45 U.S.C. Sections 51–60 and 45 U.S.C. Section 11. It alleges that defendant violated the provisions of the Safety Appliance Act, Section 11, supra, in that the hand brake on its gondola coal car which was a part of defendant's train #550 was defective and insufficient and did not function efficiently; further, that as a result of the negligence of defendant as set forth in count 1 which was incorporated in count 2, and as a result of defendant's violation of the Safety Appliance Act by failing to have its coal car equipped with efficient hand brakes, he lost his handhold on the rungs of the ladder of the coal car because of the snow and ice, causing him to fall to the ground and severely injure his back.

Defendant in its answer to count 1 admitted the employment of plaintiff and that the issues in the case were governed by the Federal Employers' Liability Act, but denied that it was guilty of any acts of negligence which contributed in any manner to the injuries sustained by plaintiff. In answering count 2 defendant denied that there were any defects of malfunctioning in its hand brake, and denied that it in any manner violated the provisions of the Safety Appliance Act. In addition to the general denials as to both causes of action, defendant also set up an affirmative defense of contributory negligence on the part of plaintiff asserting that he failed to use due care or keep a proper lookout in performing his duties as its employee, and was guilty of contributory negligence in various other particulars as set forth in detail in its answer.

The case was heard by the court without a jury on October 26, 1967. During the trial plaintiff testified in his own behalf, as did Doctors Piggott and Kingsbury who attended him after his injuries. Defendant presented two witnesses, William E. Dease, Jr., its car foreman at the Florence yard who supervised the inspection and maintenance of its cars and trains, and W. D. Kassens who was conductor of defendant's train #550 at the time of plaintiff's fall from the coal car on said train.

In accordance with Rule 52(a) of Federal Rules of Civil Procedure, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff Charles M. Rose, 51 years of age, was born October 11, 1916 and had been employed by defendant for 27 years in various capacities. On February 4, 1965 he reported to defendant's Florence yard for work at 5:00 a.m.; the temperature was below freezing and he commenced his usual duties in preparation for departure of train #550 from Florence to Hartsville, South Carolina. He first went to the cab of the train, straightened it up, then started at the cab and moved toward the engine checking the hand brakes on the various cars. He had checked eight to ten cars finding that the hand brakes were applied on two or three when he came to the gondola coal car where the accident occurred.

2. In accordance with what he testified was his usual custom of releasing brakes from these cars he climbed on the lower rung of the ladder on the end of the car and reached up to release the brake without climbing up to the brake platform just below the brake wheel which was used to apply and release the hand brake. He attempted to disengage the hand brake by first turning the wheel clockwise from this position then releasing it, but the brake would not release. He then climbed up the ladder and stood on the brake platform in order that he could put more pressure on the brake wheel to release it. After he climbed onto the platform he was able to release the brake without any apparent difficulty. When he

climbed up the car ladder to the brake platform, he saw or should have seen the snow and ice collected thereon.

3. After releasing the brake he attempted to climb down from the platform by placing his feet on the third rung of the ladder or grab-iron from the top and catching the top grab-iron with his hands. At this time his gloves became "messed up" with snow and ice which had accumulated on the lip or top rim of the car and the grab-irons, causing him to lose his grip and footing, and resulting in his falling backwards landing on a cross tie of an adjoining track in a sitting position.

4. Plaintiff was taken to the McLeod Infirmary in Florence where he was treated for several weeks by Dr. Charles H. Kingsbury, a general practitioner who was his family physician and also one of defendant's doctors. Dr. Kingsbury called in Dr. J. Burr Piggott, an orthopedic surgeon and also one of defendant's physicians, in consultation. He also treated plaintiff over the period of time while he was in the hospital.

5. The medical testimony reveals that plaintiff suffered a mild to moderate compression fracture of his second lumbar vertebra, which caused him to suffer muscle spasms, pain and discomfort, and has resulted in a twenty-five percent loss of the height of this vertebral body. He remained in the hospital for about seventeen days, and was fitted with a special steel brace support for his back. He has some residual stiffness of his low back which tends to make him uncomfortable after prolonged sitting. His injury has resulted in a mild permanent disability of from twelve to fifteen percent in the functioning of his lumbar spine which, according to Dr. Piggott, should not interfere with his returning to his former job, nor work any tremendous hardship on him.

6. Plaintiff returned to his regular employment on or about May 4, 1965. His doctors recommend that he continue his active employment maintaining the longest working hours and doing the hardest work for which he is trained that is available to him. He is now working seven days a week in a very strenuous job.

7. All hospital, doctors', medical and drug expenses incurred by plaintiff as a result of his injuries have been paid in full by defendant.

8. Plaintiff's earnings for the last several years are as follows:

1962—$11,167.54
1963— 12,266.28
1964— 13,856.77
1965— 8,974.36 (year injured)
1966— 12,816.07

During 1967 up to the time of the trial plaintiff had lost fifteen days from his work because of the injuries to his back, resulting in a loss in salary of $650. Further, there have been two blanket five percent raises in pay since his injury in 1965. During 1965 the year he was injured plaintiff lost approximately $4,700 from February 4th to May 4th while he was unable to work as a result of his injuries. During 1966 his earnings were approximately $1,000 less than they were in 1964, which he attributes to his missing time from his work because of his injury, and he has also lost $650 in earnings during 1967, for a total of $6,350.00 in lost earnings to date.

9. Plaintiff, under the South Carolina Mortuary Statute, Section 26–12 of the 1962 South Carolina Code of Laws, as amended, at age fifty-one has a life expectancy of 22.82 years. He still has fourteen working years until his retirement age of sixty-five, and will in all probability lose some time each year during this period from his injuries, and will continue to suffer some mild pain and discomfort as a result thereof.

10. The evidence reveals that it had not been snowing or raining in the Florence area prior to plaintiff's accident, and that the snow and ice were on the coal car when it was brought into the Florence yard. There is a sharp conflict between plaintiff and defendant's witnesses as to defendant's custom and practice of inspecting trains as they

come into the yard; plaintiff testified that trains such as #550 were generally inspected as they came in, as well as before they left. Mr. Dease, defendant's car foreman at Florence, testified that there was no inbound inspection of a train that is going to be switched or broken up, and that such trains are not inspected until they are made up ready to leave the yard. Under Dease's testimony, there would have been no reasonable way for defendant's employees to have known about the snow and ice on the coal car prior to the time plaintiff climbed upon it to release the hand brake. The court, therefore, finds that plaintiff has failed to carry his burden of proof to establish by the preponderance of the evidence that such inbound trains are generally or customarily inspected by defendant.

11. There is also a sharp conflict between plaintiff and defendant's witnesses as to the usual or customary manner used by defendant's employees in releasing hand brakes. Plaintiff testified that the usual manner in which he released the hand brake was to climb on the bottom rung of the ladder, reach up and pull clockwise on the release wheel without climbing up to the brake step or platform. He further testified that he had seen many of defendant's other employees releasing brakes in this manner. On the other hand, Dease testified that he had been applying and releasing hand brakes for at least eleven years, that he always climbed upon the brake stand to do so, and that he knew of no other trainmen who released them in the manner as claimed by plaintiff. He further testified that defendant's safety instructions in effect at that time required that an employee climb to the brake stand to release the brake.

Mr. Kassens, the conductor of the train at the time of plaintiff's injury, who had worked for defendant for fifty years and, incidentally who had retired in September of this year, testified that if the hand brake has been applied hard it is best to get on the brake stand to release it, but if the brake has not been applied too tight it is not generally necessary to climb on the stand. He further stated that he had seen many of defendant's employees release brakes from the ladder as plaintiff did without climbing upon the brake platform. He further testified that as of February 1965, the date of the accident, there were no written company instructions in reference to the manner of releasing brakes, but that according to the company's oral instructions the employees were required to climb upon the platform before attempting to release them. He further stated, however, that these instructions were not generally followed and he never knew of anyone who was disciplined or criticized for failing to follow such instructions.

■ 12. Although plaintiff had difficulty in releasing the hand brake on the car in question by climbing onto the bottom rung of the ladder and reaching up to the release wheel, thereafter when he climbed up to the brake platform where he could get a solid footing and a good firm grip on the release wheel with both hands he experienced no trouble in releasing the hand brake. Therefore, the court concludes that such brake was "efficient" and not defective or insufficient. Plaintiff's injury occurred after the hand brake had been fully released. He had crossed over from the brake platform to the ladder on the outside end of the car and was proceeding to climb down to the ground when he lost his hand grip, slipped, and fell.

13. There was no evidence of any rule or company regulation requiring defendant to inspect its incoming trains, or to remove snow and ice from its cars' ladders.

## CONCLUSIONS OF LAW

The court has proper jurisdiction of the parties and of the subject matter of the action. The applicable laws are the Federal Statutes known as the Federal Employers' Liability Act, 45 U.S.C. Sections 51–60, and Safety Appliance Act, 45 U.S.C. Section 1 et seq., and the gen-

eral common law principles governing negligence and proximate cause.

From the foregoing factual findings the court concludes that plaintiff has failed to prove his case against defendant under the Safety Appliance Act, 45 U.S.C. Section 11, inasmuch as he has failed to present probative facts to prove that the hand brake in question was defective, inefficient, or insufficient in its operation on the occasion in question. As the United States Supreme Court stated in Myers v. Reading Co., 331 U.S. 477, at p. 482, 67 S.Ct. 1334, at p. 1338, 91 L.Ed. 1615 (1947):

> "Here it is not necessary to find negligence. A railroad subject to the Safety Appliance Acts may be found liable if the jury reasonably can infer from the evidence merely that the hand brake which caused the injuries was on a car which the railroad was then using on its line, in interstate commerce, and that the brake was not an 'efficient' hand brake. Furthermore—
>
> > " 'There are two recognized methods of showing the inefficiency of hand brake equipment. Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner.' "

From the evidence the court concludes that plaintiff has failed to show by either of the above recognized methods that the hand brake in question was not "efficient" which caused his injuries. The evidence is undisputed that the hand brake was properly released by plaintiff without any undue difficulty once he had climbed to the brake platform where he could get a better hold on the release wheel. It is obvious that the brake was applied hard or tight; and for that reason, rather than for any defect or inefficiency in the brake itself, he was unable to release it from below as was his custom when a brake had not been applied hard. Furthermore, at the time of plaintiff's injury he had already released the brake, had climbed over from the brake platform onto the ladder on the side of the car, and was proceeding to climb down to the ground when he slipped and fell. Even if the brake had been found to be inefficient on this occasion it had already been properly released, and there was no causal connection between its inefficiency and plaintiff's slipping and falling, which was caused solely by the snow and ice on the rungs of the ladder he was using to dismount from the car.

■ As to defendant's liability under the Federal Employers' Liability Act as contended in count 1 of his complaint plaintiff, in order to recover, must establish by the preponderance of the evidence that defendant was guilty of some negligence which was at least a contributing proximate cause of his injuries; he must prove that defendant knew or should have known that the snow and ice was on its car; that it owed plaintiff the duty to remove it; that it breached its duty to remove it; and that such acts of defendant were the proximate cause of his injuries. As the Supreme Court held in Tiller v. Atlantic Coast Line RR. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943), involving an appeal from this Circuit, the question of the negligence of the railroad-employer is to be determined by the general common law rule which defines negligence as the lack of due care under the circumstances; or doing what a person under the circumstances would not have done; and the standard of care must be commensurate to the dangers of the employment. Plaintiff must establish by the preponderance of the evidence that under the circumstances presented defendant failed to use due care; that it failed either by acts of omission or commission to do what a person of ordinary reason and prudence would have done under the same or similar circumstances. In accord the Third Circuit Court of Appeals in Kimbler v. Pittsburgh & Lake Erie Railroad Company, 331 F.2d 383, 385 (1964) stated:

> "It is well settled that a railroad is not an insurer of the safety of its employees. Nevertheless it does owe

them the continuing duty of using due care in providing them with a reasonably safe place to work, and reasonably safe ingress and egress to that place. When an employee is injured, the test for determining the railroad's liability is to ascertain whether it has failed to exercise reasonable care under the circumstances. It will not be held liable for injuries resulting from causes which cannot be eliminated through use of due care."

There is no difficulty in determining the correct and applicable principles of law which govern the issues herein. The main difficulty encountered is applying these principles to the facts as they have been determined. The gravamen of plaintiff's complaint is that defendant was negligent in failing to provide plaintiff a safe place to work in that it failed to remove the snow and ice from its car when it knew that its employees, including plaintiff, would be required to work on and about such equipment in the performance of their duties, and in failing to warn plaintiff of the icy, dangerous and unsafe condition of the coal car.

 After a thorough, careful consideration of the factual situation, the applicable statutes, the relevant Supreme Court and other appellate court decisions dealing with this issue, the court is constrained to conclude that plaintiff has failed to establish any negligence on defendant's part which was a contributing, concurring, proximate cause of plaintiff's injuries. As before stated, plaintiff has failed to establish that there was a duty or a custom on the part of defendant to inspect all inbound cars for snow and ice as soon as they arrived at its yard from the outside. Even though the temperature was below freezing there had been no snow, sleet or rain in the Florence area immediately before the accident. There is nothing in the record to indicate that defendant knew, or should have known, of the presence of the snow and ice which had collected on its coal car. There was no testimony as to how long this car had been in the Florence yard prior to the accident, and the court has found that plaintiff has failed to establish that defendant made inspections of this type of inbound train. The court therefore concludes that there is no adequate showing that defendant failed to use due care under the circumstances in failing to inspect the car, in failing to remove the snow and ice from the car, or in failing to warn plaintiff of their presence thereon. If there were any negligence involved, it was on plaintiff's part. He had climbed up the coal car ladder to reach the brake platform, and he observed, or reasonably should have seen, the snow and ice on the ladder rungs. He was an experienced trainman of twenty-seven years service who should have recognized the danger to his own safety caused by the snow and ice. He was required to use due care under the circumstances for his own safety, and the greater the danger the greater degree of care is required.

The case of Raudenbush v. Baltimore & O. R. Co., 160 F.2d 363 (3rd Cir. 1947), involves a somewhat similar factual situation to the present case and supports the court's conclusion herein. As the Third Circuit stated in *Raudenbush* at pages 366, 367:

"It is a general rule of wide acceptation that since railroad companies have no control over the vagaries of the weather or climatic conditions that there is no liability for injuries resulting from the mere existence of ice or snow and disconnected from other circumstances. It is true, however, that a railroad company, like other employers, must furnish its employees a reasonably safe place to work. The phrase "reasonably safe place to work" is a term of relative application. It does not mean the absolute elimination of all dangers, but the elimination of those dangers which could be removed by the exercise of reasonable care on the part of the employer.

"The place of work here was a switch yard. It is a place of moving cars and locomotives and no reason exists why, within the confines of such yard, the employer should not be re-

quired to exercise a reasonable degree of care to prevent an accumulation of snow or ice in such quantity and location as would constitute a menace to the safety of the employees in the performance of their various duties. The degree of care to be exercised by a party must have some reasonable relationship to the ability of that party upon whom the duty is cast to perform such duty. In this case we accept the statement of the learned judge that there were some 930 cars in the yard awaiting removal. The snowfall had ceased only an hour or hour and a half and had left a 'very, very thin coating.' While this case concerned the movements of only 14 cars, yet a somewhat similar duty would exist as to all other cars similarly situated. * * * We do not think that under the facts of this case, and particularly in view of the recentness of the storm and slight nature of the snowfall, that any duty existed on the part of the railroad company to remove the light fall of snow from the area of the deceased's employment and think no verdict could be based upon the violation of such supposed duty."

Likewise the Seventh Circuit in Anderson v. Elgin, Joliet and Eastern Railway Co., 227 F.2d 91 at page 95 (1955), which involved an action brought by a switchman against the railroad under the Federal Employers' Liability Act for injuries sustained in a fall on ice in its railroad yards, stated:

" 'It is a general rule that a railway company is not liable to its employees for injuries resulting from climatic conditions, such as ice and snow; but within its yard limits it must exercise a degree of care commensurate with the risks to prevent the accumulation of snow and ice in such quantity, form, and location as to be a menace to the safety of its employees working in its yards. * * * The duty of providing a reasonably safe place for the carrying on of the work is a continuing one and must be exercised whenever circumstances demand it.' "

See also Missouri Pacific Railroad Company v. Aeby, 275 U.S. 426, 48 S.Ct. 177, 72 L.Ed. 351 (1928); and Detroit, T. & I. R. Co. v. Banning, 173 F.2d 752 (6th Cir. 1949).

Since the court has concluded that plaintiff has failed to make out his case either under the Federal Employers' Liability Act by establishing any actionable negligence on defendant's part under the circumstances, or under the Safety Appliance Act in that it has concluded that the hand brake was not inefficient or defective on the occasion in question, it is

Ordered that plaintiff's complaint be dismissed and that judgment be entered for the defendant.

Let judgment be entered accordingly.